# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00724-CR

**Curtis L. Adams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 9030665, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### O P I N I O N

Appellant Curtis L. Adams appeals his conviction for violation of commitment requirements of a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.085 (West 2003).[1] Appellant waived trial by jury and entered a plea of "not guilty." After a bench trial, the trial court found appellant guilty and assessed his punishment at four years' imprisonment.

---

[1] Section 841.085 provides:

> A person commits an offense if the person violates a requirement imposed under section 841.082. An offense under this section is a third degree felony.

Tex. Health & Safety Code Ann. § 841.085 (West 2003).

**Points of Error**

Appellant advances twenty-three points of error. Among the points of error, appellant complains that the charging instrument was not a valid indictment, the trial court did not have jurisdiction because the civil commitment order was invalid, the evidence was legally insufficient to show appellant violated a valid commitment order, the evidence was factually insufficient to show appellant violated a commitment requirement in violation of section 841.085, and the evidence was legally and factually insufficient to show that he possessed marihuana, threatened John Harris with imminent bodily injury, or intentionally and knowingly damaged property. Further, appellant asserts that the trial court erred in using the Penal Code's definition of "sexual contact" in finding that appellant had engaged in sexual contact, because his conduct did not meet that definition. Appellant also challenges the constitutionality of chapter 841 of the Texas Health and Safety Code and section 841.085 in particular on various grounds.

**Background**

In 1999, the legislature enacted the Civil Commitment of Sexually Violent Predators Act, which was codified as chapter 841 of the Texas Health and Safety Code. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143, since amended Act of May 30, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1505, 1514-19 eff. Sept. 1, 2003.

Section 841.001 relating to legislative findings provides:

> The legislature finds that a small but extremely dangerous group of sexually
> violent predators exists and that those predators have a behavioral abnormality that

is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

Tex. Health & Safety Code Ann. § 841.001 (West 2003).

Chapter 841 establishes the civil commitment procedure which includes definitions, who is a sexually violent predator, the petition, trial, commitment and commitment requirements. The background and history of chapter 841 have been discussed at length in *In re: Commitment of Fisher*, 164 S.W.3d 637, 639-42 (Tex. 2000), and in *In re: Commitment of Browning*, 113 S.W.3d 854, 855-57 (Tex. App.—Austin 2003, pet. denied). We need not further describe the procedure involved.

The record reflects that on September 30, 2002, appellant Adams was civilly committed as a sexually violent predator under chapter 841 in the 221st District Court of Montgomery County, Texas, and that the commitment requirements of section 481.082 then in effect, among others, were imposed on appellant. Appellant appealed this civil commitment under chapter 841 and the commitment was affirmed. *In re: Commitment of Adams*, 122 S.W.3d 451 (Tex. App.—Beaumont 2003, no pet.).

On January 10, 2003, appellant entered into a "Civil Commitment Requirements: Treatment and Supervision Contract" with the Interagency Council on Sex Offender Treatment and

3

his case manager which contract contained ninety-seven conditions with which appellant was to comply.

Among the provisions of the contract were the following:

37. I will not have sexual contact with a person without first telling him or her that I am a sexually violent predator. Before I have sexual contact with that person, I will sign a release permitting unfettered, two-way communication between the case manager and treatment contractor and my potential sexual partner. I understand that the case manager and treatment contractor must meet with my potential sexual partner before I have sex with that person;

40. I will not commit any new crimes.

One of the commitment requirements was that appellant reside in Travis County. Appellant was placed in Burks Supervised Living Center in Austin.

On September 23, 2003, appellant was indicted under section 481.085 in the 147th District Court of Travis County. The indictment alleged that appellant violated his commitment requirements by intentionally and knowingly possessing and transferring marihuana; intentionally and knowingly damaging tangible property, causing a pecuniary loss of more than $50 but less than $500; and intentionally and knowingly threatening John Harris with imminent bodily injury. In addition, the indictment alleged appellant violated an element of his treatment plan by touching the buttocks of an unknown female and allowing her to touch his penis without obtaining a release permitting such as required by the treatment contract he signed.

There was no motion to quash the indictment. Appellant waived any defect, error, or irregularity in the charging instrument. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005). The cause was heard before the trial court on a plea of "not guilty."

4

Lisa Worry, appellant's first case manager with the Council on Sex Offender Treatment, testified that appellant had signed the treatment contract described and that she explained all ninety-seven conditions to him. Worry related that appellant also signed an "Open Communication Form" acknowledging that any communication made by appellant to persons working in the treatment program could be shared, would not be confidential, and could be used to inform law enforcement agencies, local prosecutors, and courts.

Worry testified that on February 19, 2003, appellant told her that another resident of the Burks home had given him some marihuana and that, several days later, he returned the marihuana to the other resident without using it. Appellant also told Worry that he had a sexual contact with a female on a bus, that he allowed her to touch his genitals, that he kissed her on her ear, and that he touched her buttocks as she left the bus. Dr. Nicholas Carrasco, a psychologist and registered sex offender treatment provider, testified that four weeks after he began treating appellant on January 22, 2003, appellant informed him about the possession of marihuana and the sexual contact on the bus.

John Harris, a resident and employee of the Burks Living Center, testified that he had been convicted of the felony offense of indecency with a child, but at the time was on probation for failure to register as a sex offender. Harris related that he was a monitor of security at the Burks home and that he delivered mail, did bed checks, and performed certain maintenance chores. On several occasions, as part of his job, Harris had reported appellant for several house infractions. On March 23 or 24, 2003, Harris returned to the Burks home. Appellant was upstairs smoking a cigarette. According to Harris, appellant told him: "I've got a problem with you. Why don't you

5

come upstairs and I will kick your butt." Harris considered that he was being threatened with imminent bodily injury. Appellant continued to curse Harris and called him a coward and a "chicken butt." Harris left and reported the matter to Albert Taylor, the building manager.

The next day appellant was in the day room and Harris was outside on a porch. Appellant told Harris, "Come on in here. We have some unfinished business to take care of." Harris responded that he was not interested in discussing anything with appellant. Immediately, appellant struck the wall of the day room. A clock fell from the wall. Harris called Taylor. Appellant was escorted away. Harris observed a hole in the wall of the day room that had not been there before.

There was a videotape camera in the day room. Harris identified a videotape that showed appellant punching the wall. It was introduced in evidence. Taylor testified that appellant and Harris had had verbal disagreements, and that he had instructed appellant not to talk to Harris. Taylor identified several photographs depicting the damage to the wall in the day room caused by appellant. Taylor testified that he had care, custody, and control of the property, and that he had a greater right of possession than appellant. Taylor stated that the damage cost or pecuniary loss suffered was $68.53. He had not given appellant consent to damage the wall.

Carlton Scott, an employee of the Texas Department of Public Safety Special Crime Services, testified as a defense witness. Scott was engaged in monitoring those civilly committed by use of a portable tracking device. Scott testified that on one occasion, the tracking device on appellant, an outpatient, quit working or was "not gaining G.P.S." because appellant was out of range of the monitor. Scott reported that appellant got off a bus and telephoned him. He told appellant

6

to return to the Burks house and appellant did so. In mid-August 2003, Scott learned that appellant had been mistakenly released from the Travis County jail.[2] He found appellant on a bus near the Burks house. Appellant offered no resistance and stated that his release had been unusual. Scott had been told about the damage to the wall in the day room. He had also taken a written statement from Harris about the threat made by appellant.

Lila Smith, appellant's second case manager, testified for the defense. Smith related that appellant told her that "a little old lady" on a bus had given him a kiss and "that was it." Smith stated that appellant had admitted punching the wall in question.

Appellant testified and acknowledged that he had signed the Treatment and Supervision Contract and the "Open Communication Form." Appellant reported that someone (unidentified) walked up to him and handed him a folded envelope and said, "Man, that's for you." When he opened the envelope, he discovered it contained marihuana but "it really wasn't much in there." Appellant stated that he returned the envelope to the giver. The individual knew the "situation" appellant was in. Appellant denied using any of the substance. Appellant reported the incident to his case manager, Doctors Bruce and Carrasco, and informed his therapy group.

Appellant testified that the woman on the bus was 43 years old and that when she touched him through his clothing, it surprised him. He did not follow her off of the bus. He voluntarily reported the incident.

---

[2] The reason that appellant was in the Travis County jail is not made clear by this record.

Appellant related that he had difficulties with Harris, who threatened to see that appellant was prosecuted again. Appellant reported his problems with Harris to his case manager, Scott, Taylor, and others. He asked for a transfer to no avail. Appellant related that he did not intend to damage property at the Burks house. He said that Harris was standing in the hall talking "noise" to him and that "it just kind of frustrated me." It was then that he struck the wall of the day room.

At the close of the guilt/innocence stage of the trial, the trial court found beyond a reasonable doubt that appellant had illegally possessed a useable quantity of marihuana but rejected a finding of "delivery." The trial court also found that appellant had threatened John Harris and had damaged property as alleged. The trial court rejected the argument that the touching of the buttocks of the woman on the bus as she left was not sexual contact but found that the touching of appellant's penis "by the other person" was sexual contact. Thus, the court found appellant had violated a commitment requirement. At the penalty stage of the trial, the trial court assessed appellant's punishment at four years.

Our discussion of the points of error will not necessarily be in chronological order for various reasons.

**A Sufficiency Challenge**

In his first point of error, appellant challenges the legal sufficiency of the evidence "to show that appellant committed an offense under § 841.085 of the Health and Safety Code as he did not violate a commitment requirement imposed under § 841.082."

Appellant argues that there can be no violation of section 841.085 unless it is proven beyond a reasonable doubt that the defendant violated a commitment requirement set out in section 841.082[3] and imposed by the civil commitment order.

---

[3] Section 841.082, in effect at time of appellant's civil commitment on October 2, 2002, provided:

(a) Before entering an order directing a person's outpatient civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include:

(1) requiring the person to reside in a particular location;

(2) prohibiting the person's contact with a victim or potential victim of the person;

(3) prohibiting the person's use of alcohol or a controlled substance;

(4) requiring the person's participation in a specific course of treatment;

(5) requiring the person to submit to tracking under a particular type of tracking service and to any other appropriate supervision;

(6) prohibiting the person from changing the person's residence without prior authorization from the judge and from leaving the state without that authorization;

(7) if determined appropriate by the judge, establishing a child safety zone in the same manner as a child safety zone is established by a judge under Section 13B, Article 42.12, Code of Criminal Procedure, and requiring the person to comply with requirements related to the safety zone;

(8) requiring the person to notify the case manager within 48 hours of any change in the person's status that affects proper treatment and supervision, including a change in the person's physical health or job status and including any incarceration of the person; and

9

Appellant cites *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) as the standard of review for legal sufficiency issues. *Jackson* requires the appellate court to review the evidence in the light most favorable to the judgment asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Id*. Appellant does not discuss the facts of the case and does not challenge the indictment. No pretrial motion to quash the indictment was filed. Appellant thus waived his right to complain on appeal of any defect, error or irregularity in the charging instrument. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005).

Appellant argues generally that the State proved only violations of the elements of the treatment plan and not violations of commitment requirements as mandated by section 841.085. Appellant acknowledges that commitment requirements under section 841.082 (a) were imposed by the civil commitment order. He relies on that part of the civil commitment order where the trial

---

(9)  any other requirements determined necessary by the judge.

(b)  The judge shall provide a copy of the requirements imposed under Subsection (a) to the person and to the council. The council shall provide a copy of those requirements to the case manager and to the service providers.

(c)  Immediately after the person's commitment, the judge shall transfer jurisdiction of the case to a district court, other than a family district court, having jurisdiction in the county in which the defendant is residing.

Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143 (codified as § 841.082) as amended Act of May 30, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1505, 1514-19. *See* Tex. Health & Safety Code Ann. § 841.082 (West Supp. 2004-05).

court gave "notice" that appellant may be criminally prosecuted if he violated "a commitment requirement under Health & Safety Code § 841.082 or any element of the treatment plan." Appellant contends that this language of the commitment order treats compliance with the elements of a treatment plan as "something other" than a commitment requirement imposed under section 841.082. Appellant urges that violations of the elements of a treatment plan should be enforced as contempt of court. We do not agree.

In reviewing the commitment order in its entirety, it is well to keep in mind that among the commitment requirements of section 841.082 is "any other requirement determined by the judge." Tex. Health & Safety Code Ann. § 481.082(a)(9) (West Supp. 2004-05). In the commitment order, the trial court specified that the imposition of the commitment requirements of section 841.082 on appellant was to ensure his compliance with treatment and supervision to protect the community. The order further decreed that a treatment plan be developed by the treatment provider with the approval of the Interagency Council on Sex Offender Treatment. The order also required the case manager periodically to assess the success of the treatment and supervision of appellant and make recommendations to the district court in the county "with venue." The case manager was also ordered to make a biennial report to the district court concerning appellant.

As noted earlier, the commitment order gave "notice" to appellant that he could be criminally prosecuted if he violated a commitment requirement under section 841.082 *or any element of the treatment plan*. Under section 841.082(a)(9), the trial court had the authority to make any other requirement a commitment requirement. The phraseology used did not cause the violation of "any element of the treatment plan" to be "something other" than a commitment requirement

11

particularly when considered in connection with the commitment requirement imposed that appellant "shall participate in a specific course of treatment."

The commitment order might not as a model, but the order, when read as a whole in a reasonable manner, establishes compliance with the elements of the treatment plan as being within the commitment requirements properly imposed under section 841.082. Further, we observe that in *Beasley v. Molett*, 95 S.W.3d 590, 609 (Tex. App.—Beaumont 2002, pet. denied), the court held that the fact that different judges might establish different specific requirements does not render these requirements necessarily vague after they are issued and subject to compliance. We overrule point of error one.

**Other Sufficiency Challenges**

**(a) Criminal Mischief**

In points of error six and eight, appellant contends that the evidence was legally insufficient to prove that appellant intentionally and knowingly damaged property in violation of his commitment requirement by committing a crime.

Section 28.03 of the Texas Penal Code provides in pertinent part:

(a) A person commits an offense if, without the effective consent of the owner:

(1) he intentionally or knowingly damages or destroys the tangible property of the owner;

. . .

(b) Except as provided by Subsections (f) and (h), an offense under this section is:

    (2)  a Class B misdemeanor if the amount of pecuniary loss is $50 or more but less than $500[.]

Tex. Pen. Code Ann. § 28.03(a)(1), (b)(2) (West Supp. 2004-05).[4]

Section 28.06 of the Texas Penal Code provides in pertinent part:

    (a)  The amount of pecuniary loss under this chapter, if the property is destroyed, is:

        (1)  the fair market value of the property at the time and place of the destruction; or

        (2)  if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the destruction.

    (b)  The amount of pecuniary loss under this chapter, if the property is damaged, is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred.

*Id*. § 28.06(a), (b) (West 2003).

The criminal mischief statute is worded disjunctively to allow for prosecution if a person "damages or destroys tangible property. . . ." *See id*. § 28.03(a)(1) (West Supp. 2004-05); *Cullen v. State*, 832 S.W.2d 788, 796 (Tex. App.—Austin 1992, pet. ref'd); *Athey v. State*, 697 S.W.2d 818, 821 (Tex. App.—Dallas 1985, no pet.). When the prosecution alleges conjunctively in a charging instrument that a defendant "damages *and* destroys" tangible property under section

---

[4] Subsection (f) and (h) of section 28.03 of the Penal Code are inapplicable to the instant case. *See* Tex. Pen. Code Ann. § 28.03(b), (h) (West Supp. 2004-05).

28.03(a)(1), the State can either prove damage to property or destruction of property to support the charge. *Moreno v. State*, 861 S.W.2d 512, 514 (Tex. App.—San Antonio 1997, no pet.); *Cullen*, 832 S.W.2d at 796; *Milo v. State*, 748 S.W.2d 614, 617 (Tex. App.—San Antonio 1988, no pet.). Under the statute, the offense is complete if the property is damaged though not destroyed. *Athey*, 697 S.W.2d at 821. "Destroy" could refer to total or partial destruction. *Cullen*, 832 S.W.2d at 796-97. The theory relied upon by the State, be it damage or destruction, determines what the State must prove regarding the amount of pecuniary loss. *See* Tex. Pen. Code Ann. § 28.06(a), (b); *Moreno*, 861 S.W.2d at 514.

The indictment, *inter alia*, alleged that appellant on or about March 24, 2003, failed to comply with the commitment requirements imposed under chapter 841 of the Texas Health and Safety Code

> by violating an element of his treatment plan, to wit: committed a new offense, to wit:
>
> Curtis Adams did then and there intentionally and knowingly damage tangible property, to wit: a wall located at Burks House in Travis County, Texas, by striking the wall without the effective consent of the owner of said property, and did thereby cause of [sic] pecuniary loss of $50 or more but less than $500 to the said owner.

No pretrial motion to quash the indictment was presented. Appellant waived any error, defect, or irregularity in the indictment. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005).

14

**Legal Sufficiency**

In analyzing whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson*, 443 U.S. at 319; *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996).

The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A reviewing court must consider all the evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

Appellant waived trial by jury, and thus the trial court was the trier of fact and could accept or reject all or any witness's testimony. Reconciliation of evidentiary conflict is solely the function of the trier of fact. *See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd). Moreover, the evidence is not rendered insufficient merely because the defendant presented a different version of the events. *Turro v. State*, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993).

There is little question that the evidence showed that appellant damaged the wall in the day room of the Burks house. John Harris, monitor of security at the house, testified that he had had difficulties with appellant and that on March 24, 2003, he was on the porch outside the day room and refused appellant's demand to come inside and take care of "unfinished business." Harris then

15

heard appellant strike the wall and later saw the damage. A video camera in the day room caught appellant on film punching a hole in the wall. The film or tape was offered in evidence. Albert Taylor, manager of the Burks house, testified that he had care, custody, and control of the property in question and had a greater right of possession of the property than appellant. He did not consent to appellant damaging the wall. Taylor testified that the pecuniary loss suffered was $68.53 (cost of repairs).

Appellant admitted in his testimony that he punched the wall because he was "frustrated" with Harris. Appellant claimed that he did not intend to damage the wall. In his points of error six and eight, appellant urges that the evidence is legally insufficient to show that he intentionally or knowingly damaged the wall. Only one of the culpable mental states is necessary to support a conviction for criminal mischief. Tex. Pen. Code Ann. § 28.03(a)(1). Intent can be inferred from the acts, words, and conduct of the accused. *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd). Proof of a culpable mental state generally relies upon circumstantial evidence. *Id*. Because mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred, the trier of fact may infer intent from any facts in evidence that tend to prove the existence of such intent. *Id*. Knowledge like intent, may be inferred from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Martinez v. State*, 844 S.W.2d 279, 283 (Tex. App.—San Antonio 1992, pet. ref'd); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.).

Viewing all the evidence in the light most favorable to the judgment, we conclude any rational trier of fact could have found beyond a reasonable doubt all the essential elements of

16

criminal mischief as charged. The evidence was legally sufficient to support a finding by the trial court that appellant committed the offense of criminal mischief. Points of error six and eight are overruled.

**(2) Factual Sufficiency**

In points of error seven and nine, appellant challenges the factual sufficiency of the evidence to prove that he intentionally or knowingly damaged the property in question. In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the evidence of alternate hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact-finder's determination, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the evidence of guilt—considered alone—is too weak to support a finding of guilt beyond a reasonable doubt or if the strength of the contrary evidence precludes a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). In conducting either a legal or factual sufficiency review, we consider all the evidence, rightly or wrongly, admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).

Appellant has briefed points of error seven and nine together with points six and eight concerning the legal sufficiency of the evidence. At the conclusion of his legal sufficiency argument, appellant simply requests that "[I]n the alternative, we find the evidence factually insufficient to

17

constitute criminal mischief by citing *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) and *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992)."

After considering all the evidence equally, we find no basis for setting aside the trial court's finding as to criminal mischief on the basis of manifest injustice. *See Zuniga*, 144 S.W.3d at 484-85. Points of error seven and nine are overruled.

**One Violation of a Commitment Requirement is Sufficient**

The evidence, legally and factually, is sufficient to support the trial court's finding that appellant committed the offense of criminal mischief as alleged, in violation of a condition or element (not to commit a new crime) of his treatment program in which appellant was required to participate in and comply as a commitment requirement imposed by the District Court of Montgomery County. This violation standing alone is sufficient to sustain appellant's conviction under section 841.082. *Cf. Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980); *Jones v. State*, 571 S.W.2d 191, 193-94 (Tex. Crim. App. 1978); *Rose v. State*, 523 S.W.2d 402, 404 (Tex. Crim. App. 1975) (one sufficient ground will support the revocation of probation). Proof of a violation of any commitment requirement imposed under section 841.082 is sufficient to support conviction under section 841.085. *Cf. Joseph v. State*, 3 S.W.3d 627, 640 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Smith v. State*, 932 S.W.2d 279, 283 (Tex. App.—Texarkana 1996, no pet.) (proof of any alleged probation violation is sufficient to support revocation).

**Threatening Imminent Bodily Injury**

Nevertheless, we shall consider appellant's fourth and fifth points of error that the evidence is legally and factually insufficient to prove that appellant threatened John Harris with imminent bodily injury as alleged.

The indictment in part alleged that appellant failed to comply with his commitment requirement imposed under chapter 841 of the Health and Safety Code by violating an element of his treatment plan on or about March 24, 2003, "by committing a new offense, to wit: "Curtis Adams did then and there intentionally and knowingly threaten John Harris with imminent bodily injury."

Section 22.01 of the Penal Code provides in pertinent part:

(a) A person commits an offense if the person:

. . .

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse[.]

Tex. Pen. Code Ann. § 22.01(a)(2) (West Supp. 2004-05).[5] The offense under subsection (a)(2) is a class C misdemeanor. *Id*. § 22.01(c).

John Harris, a monitor of security at the Burks house, had reported appellant for infraction of the house rules. When Harris returned to the house on March 23 or 24, 2003, appellant told Harris that he had a problem with Harris, invited Harris upstairs and stated "I will kick your

---

[5] The current code, unchanged, is cited for convenience.

butt." Harris considered that he was being threatened with imminent bodily injury. Harris reported the threat to the manager. Appellant persisted. The next day appellant told Harris to come into the day room from the porch as they had "some unfinished business to take care of." When Harris refused, appellant punched the wall in the day room.

"'Bodily injury' means physical pain, illness or any impairment of physical condition." Tex. Pen. Code Ann. § 1.07(a)(8) (West 2003). An offense under section 22.01(a)(2) may be accomplished by threatening another person with bodily injury. There is no requirement under subsection (a)(2) that any form of weapon be displayed or used. *See Garrett v. State*, 619 S.W.2d 172, 175 (Tex. Crim. App. 1981) (holding that an assault under subsection (a)(2) may be accomplished by use of an animate object such as a dog).

Viewing all the evidence in the light most favorable to the court's finding, we conclude that any rational trier of fact could have found beyond a reasonable doubt all the essential elements of assault under subsection (a)(2). The evidence is also factually sufficient to support the trial court's finding that appellant committed the alleged assault. After considering all the evidence equally in a factual sufficiency analyses, we find no bases for setting aside the trial court's finding that appellant committed the alleged assault on the basis of manifest injustice. *See Zuniga*, 144 S.W.3d at 484-85.

The evidence, legally and factually, is sufficient to support the trial court's finding that appellant committed assault under subsection (a)(2) as alleged, in violation of a condition or element (not to commit a new crime) of his treatment program in which appellant was required to participate as a commitment requirement imposed by the District Court of Montgomery County.

20

This conclusion furnishes another basis for upholding the validity of appellant's conviction under section 841.085, although our disposition of points of error six through nine alone supports the conviction. Points of error four and five are overruled.

## Points Two, Three, Ten, Eleven and Twelve

In view of our disposition of appellant's contentions regarding the offenses of assault and criminal mischief, we need not reach appellant's points of error two and three concerning the alleged possession of marihuana, or points of error ten, eleven, and twelve concerning improper "sexual contact."

## Was the Charging Instrument an Indictment?

In point of error thirteen, appellant contends that the trial court was not vested with subject matter jurisdiction of this cause because the charging instrument did not constitute an indictment under article I, section 12 of the Texas Constitution.

There was no pretrial motion to quash the indictment. Appellant, however, argues that the instant charging instrument is outside the ambit of article 1.14(b). Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005).[6] He contends that every defendant facing felony prosecution is

---

[6] Article 1.14(b) provides:

(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

21

entitled to a grand jury indictment, *see* Tex. Const. art. I, § 10, and that for a charging instrument to constitute a valid indictment, the instrument must accuse someone with a crime "with such clarity and specificity to identify the penal statute under which the State intends to prosecute. . . ." *Duran v. State*, 956 S.W.2d 547, 550 (Tex. Crim. App. 1997); *see also Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995). Appellant urges that the instant charging instrument fails in this regard and did not vest the trial court with jurisdiction, an issue that can be raised at any time. *See* 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 2053 (West 2001).

Appellant does not tell us just why the instant charging instrument is a nonindictment under article V, section 12 of the Texas Constitution. What appellant does is to rely upon a colloquy between the trial court and the prosecutor occurring after final arguments in this bench trial. The trial court inquired as to which statutory provision the State was relying for conviction, either article 62.10 of the Code of Criminal Procedure or chapter 841 of the Health and Safety Code. The prosecutor responded that he was not prepared to answer the question. Subsequently, the prosecutor suggested a "cut and paste" mistake in the caption to the indictment as to "62.10"[7] and told the court the State was proceeding under "841." Appellant contends that if the trial court and the prosecutor were not sure which penal provision was being used, the charging instrument was a nonindictment under article V, section 12. Appellant claims that he is entitled to an acquittal. We do not agree.

---

Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005).

[7] *See* Tex. Code Crim. Proc. Ann. art. 62.10 (West Supp. 2004-05) (failure to comply with registration requirements).

The caption of the indictment does refer to "Failure to Register as a Sex Offender" but the caption is not a part of the indictment. *Stansbury v. State*, 82 S.W.2d 962, 964 (Tex. Crim. App. 1935); *Gonzalez v. State*, 664 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1984, pet. ref'd); *Garza v. State*, 653 S.W.2d 850, 854 (Tex. App.—Corpus Christi 1982, no pet.); *Thibodeaux v. State*, 628 S.W.2d 485, 487-98 (Texarkana 1982, no pet.). Appellant's only argument is without merit. Point of error thirteen is overruled.

### The Double Jeopardy and Ex Post Facto Claims

In points of error seventeen and eighteen, appellant urges that section 841.085 of the Health and Safety Code, under which he was criminally prosecuted, imposes multiple punishments in violation of the double jeopardy clause and violates his constitutional rights under the ex post facto clause. These points are briefed together. It is clear that appellant seeks relief only on the basis of the federal constitution. Appellant has not briefed any state constitutional issue. We will not address any state issue. *See Ex parte Granger*, 850 S.W.2d 513, 516 n.6 (Tex. Crim. App. 1993); *Hutchins v. State*, 992 S.W.2d 629, 630 (Tex. App.—Austin 1999, no pet.).

Appellant asserts that section 841.085, a penal statute, was enacted after the commission of and his convictions for the original criminal sex offenses; that these original convictions made him subject to commitment as sexual violent predator; and that section 841.085 adds "to the duration of his confinement." Appellant stated:

Whether these facts operate to make § 841.085 itself aside from the rest of [chapter] 841 an ex post facto law or a double jeopardy violation, depends on whether his [appellant's] punishment under § 841.085 relates back to the original criminal convictions. Appellant asserts that it does.

23

A facial constitutional challenge to the statute under which a defendant has been charged may be raised for the first time on appeal because the facial challenge affects the jurisdiction of the trial court to have entered a judgment. *See Rabb v. State*, 730 S.W. 751, 752 (Tex. Crim. App. 1987); *see also Holberg v. State*, 38 S.W.3d 137, 139 n.9 (Tex. Crim. App. 2000); *Bader v. State*, 15 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd); *Medina v. State*, 986 S.W.2d 733, 735-36 (Tex. App.—Amarillo 1999, pet. ref'd). However, there is a distinction between such a facial challenge and an "as applied to the defendant" constitutional challenge to the statute. Under an "as applied" challenge, the challenging party contends that the statute, although generally constitutional, operates unconstitutionally as to him or her because of the challenging party's particular circumstances, *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997), or as a defense to a conviction under the statute. *Bader*, 15 S.W.3d at 603; *McGowan v. State*, 938 S.W.2d 732, 740 (Tex. App.—Houston [14th Dist.] 1996, *aff'd sub. nom.*, *Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998). The statute under this type of challenge still confers upon the trial court the power to act. *Bader*, 15 S.W.3d at 603. An "as applied" challenge cannot be raised for the first time on appeal; it must be raised in the trial court. *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995); *Harris v. State*, 125 S.W.3d 45, 54 (Tex. App.—Austin 2003, pet. dism'd, untimely filed).

It is evident from appellant's argument that he contends section 841.085 is unconstitutional "as applied" to him. Appellant did not assert his contentions in the trial court.

Thus, the contentions are not before this Court for review. *Harris*, 125 S.W.2d at 54.[8]  If it could

---

[8]  The general rule is that a timely and specific objection, motion, or complaint in the trial court is necessary to preserve error for review on appeal. *See* Tex. R. App. P. 33.1.  The general rule does not apply to violations of "rights which are waivable only" and denials of "absolute systemic requirements." *Aldrick v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003).  Rights which are waivable only "include right to counsel and right to trial by jury, etc."  "Absolute systemic requirements" include jurisdiction of the person and of the subject matter, and a penal statute being in compliance with the Separation of Powers section of the state constitution. *Id*.  The *Aldrick* opinion observed that the right under the Double Jeopardy clause to be free from multiple punishments that formerly was thought to be "waivable only" actually requires an objection at trial. *Id.* (citing *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002)).  *Saldano* in turn cited *Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000) (involving a claim of multiple punishments in violation of the Fifth Amendment's Double Jeopardy clause), which was based on a court's jury charge that allowed a general verdict to be returned on different theories of the offense charged.

   *Gonzalez* observed that "[O]ur case-law on preservation of double jeopardy claims is not a model of clarity." 8 S.W.3d at 642-43.  It is not clear that *Gonzalez* clarified the procedure.  The *Gonzalez* opinion did state:

> The overriding principles expressed by this case-law are that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.

8 S.W.3d at 643 (footnotes omitted).

   In concluding that the multiple punishments violation of the Double Jeopardy clause had to be raised in the trial court to preserve review, the *Gonzalez* court noted that the record in that case failed to show a multiple punishments violation and that the defendant had not sustained his appellate burden of presenting a record showing such violation. *Id.* at 645.  The court was quick to add: "More important, requiring appellant to have timely raised his multiple punishments's claim in the trial court serves legitimate state interests and is consistent with the underlying policies of the general rules of procedural default. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)."

   In interpreting *Gonzalez*, this Court in *Duvall v. State*, wrote:

25

be argued that appellant timely raised his constitutional issue, we would be unable to evaluate either his double jeopardy multiple punishment claim or his ex post facto claim in light of the record before this Court. The exact nature of the original sex offenses, the dates of the commission of the offenses and of the convictions, and other pertinent information are not found in this appellate record. None of the civil commitment record, save the commitment order, is included in this record. Even appellant's testimony in the instant case fails to shed any light on the necessary background. It is understandable that appellant's counsel makes only general assertions in support of his claims rather than a substantial analysis. *See* Tex. R. App. P. 38.1(b), (h).

---

> Under *Gonzalez*, the critical question is not whether the defendant raised the double jeopardy issue in the trial court, but whether the record before the appellate court clearly reflects a double jeopardy violation. If a double violation is clearly apparent, the defendant will prevail on appeal; if a double jeopardy violation is not apparent, the defendant's claim fails on the merits regardless of whether he objected at trial. In other words, raising the issue in the trial court is important insofar as it is necessary to make a clear record on which to base a double jeopardy claim on appeal. *See id.* at 645-46. Applying *Gonzalez*, we now determine whether a double jeopardy violation is clearly apparent on the face of the record.

59 S.W.3d 773, 777 (Tex. App.—Austin 2001, pet. ref'd). *Accord Neal v. State*, 117 S.W.2d 301, 305 (Tex. App.—Texarkana 2003, no pet.); *Patterson v. State*, 96 S.W.3d 427, 431 (Tex. App.—Austin 2002, no pet.). Under this approach, a double jeopardy issue may be raised for the first time on appeal if the record clearly supports a violation of the double jeopardy clause. If the appellate record does not reflect the claimed violation, it is immaterial whether the objection is made at trial or for the first time on appeal or whether legitimate state interests are served.

The constitutional prohibition against ex post facto laws is a fundamental systemic requirement that cannot be waived. *Teppert v. State*, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995); *Gagiliardo v. State*, 78 S.W.3d 469, 472 (Tex. App.—Tyler 2001, pet. ref'd). The issue may be raised for the first time on appeal. However, a sufficient record would be needed to evaluate the claim.

Appellant was prosecuted for conduct consisting of a violation of commitment requirements that is prosecutable and punishable under section 841.085. Punishment under this section is not additional or extended punishment for past conduct. It is punishment for new conduct.

As noted earlier, the Texas Supreme Court in *Fisher* stated:

> The criminal penalty [in section 841.085] is separate from the civil commitment proceedings. *See Smith v. Doe*, 538 U.S. 84, 101-02, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (noting that "[a] sex offender who fails to comply with the reporting requirements may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense").

164 S.W.3d at 652 n.13.

Appellant cites *Johnson v. United States*, 529 U.S. 694 (2000), but this case is distinguishable on the law and the facts. In light of the record, we reject appellant's constitutional claims that prosecution under section 841.085 violated appellant's rights under the double jeopardy and ex post facto clauses of the federal constitution. Points of error seventeen and eighteen are overruled.

**Is Chapter 841 Punitive?**

In points of error fourteen, fifteen, and sixteen, appellant asserts that chapter 841 of the Health and Safety Code creates a criminal proceeding and violates (1) the prohibition against ex post facto laws, (2) imposes multiple punishments in violation of the double jeopardy clause, and (3) imposes successive prosecutions in violation of the double jeopardy clause.

These contentions were not raised in the trial court. On appeal, appellant briefs these points together and at length. The challenge is to chapter 841, not to the specific proceedings under

27

which appellant was convicted. Despite the phrasing of the points of error, the real thrust of appellant's contentions is that by creating criminal proceedings, chapter 841 is excessive, punitive, and not civil, and, thus, unconstitutional. In large measure, appellant relies in argument on the differences between chapter 841 and the Kansas statute providing for the civil commitment of sexually violent predators, discussed in *Kansas v. Hendricks*, 521 U.S. 346, 360-69 (1997). In *Hendricks*, the United States Supreme Court upheld the Kansas statute in the face of ex post facto and double jeopardy challenges. The Court concluded that the Kansas statute was civil in nature. *Id*. at 369.

One of several difficulties confronting appellant is the fact that the issue appellant raises has been decided adversely to appellant by the Texas Supreme Court. *See In re: Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005). The Supreme Court explored in depth different constitutional challenges surrounding the enactment of chapter 841, comparing chapter 841 to the civil commitment procedures in other jurisdictions. The Court stated:

> We conclude that the criminal penalties attaching to a violation of a commitment requirement, when considered in relation to the statutory purpose and alongside the other *Kennedy* [*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)] factors do not make the commitment scheme punitive.

*Fisher*, 164 S.W.3d at 653.

The *Fisher* court also held that:

> This criminal penalty [section 841.085] is separate from the initial commitment proceedings. *See*, *e.g.*, *Smith v. Doe*, 538 U.S. 84, 101-02, 171 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (noting that "[a] sex offender who fails to comply with the

28

reporting requirements may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense).

*Fisher*, 164 S.W.2d at 652 n.13.

In re: Commitment of Mullens, 92 S.W.3d 881 (Tex. App.—Beaumont 2002, pet. denied), rejected the argument that chapter 841 is unconstitutional because section 841.085 serves a punitive function. *Id.* at 884. *Mullens* concluded that the legislature can use the possibility of criminal sanctions to enforce the trial court's commitment order without making the purpose of civil commitment punitive. *Id.* The *Mullens* court stated that section 841.085 "deals only with violations of the requirements of the commitment order, not any prior criminal conduct." *Id.*; *see also In re: Commitment of Short*, 117 S.W.3d 520, 522-23 (Tex. App.—Beaumont 2003, pet. denied); *In re: Commitment of Martinez*, 98 S.W.3d 373, 375 (Tex. App.—Beaumont 2003, pet. denied).

Other Texas cases considering challenges to chapter 841 have generally upheld its constitutionality. *See, e.g.*, *In re: Commitment of Graham*, 117 S.W.3d 514 (Tex. App.—Beaumont 2003, pet. denied); *In re: Commitment of Almaguer*, 117 S.W.3d 500 (Tex. App.—Beaumont 2003, pet. denied); *Browning*, 113 S.W.3d at 863-65; *In re: Commitment of Morales*, 98 S.W.3d 288 (Tex. App.—Beaumont 2003, pet. denied); *Beasley v. Molett*, 95 S.W.3d 590 (Tex. App.—Beaumont 2002, pet. denied).[9]

---

[9] The only Texas case to the contrary was *In re: Commitment of Fisher*, 123 S.W.3d 828 (Tex. App.—Corpus Christi 2003), whose judgment was reversed by the Texas Supreme Court in *In re: Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005).

In fact, appellant raised the same issue of whether chapter 841 was punitive, not civil, in his appeal from his civil commitment. It was rejected. *See In re: Commitment of Adams*, 122 S.W.3d 451, 452 (Tex. App.—Beaumont 2003, no pet.). The "law of the case" doctrine has application here. It is a principle by which the initial determinations of a question of law in a case are held to generally govern the subsequent stages of the litigation. *See Carroll v. State*, 42 S.W.3d 129, 131 (Tex. Crim. App. 2001); *Shields v. State*, 27 S.W.3d 267, 270 (Tex. App.—Austin 2000, no pet.); *LeBlanc v. State*, 826 S.W.2d 640, 644 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). The doctrine is applied flexibly. *Carroll*, 42 S.W.3d at 131. Here, the law has not changed, and the circumstances have not altered the question of law presented.

Moreover, the State argues that appellant's contentions concerning chapter 841 represent a collateral attack upon the judgment and order of commitment entered against appellant in the district court of Montgomery County and affirmed on appeal in *In re: Commitment of Adams*, 122 S.W.3d at 454. We agree.

A collateral attack on a judgment is an effort to avoid its binding force in a proceeding instituted not for the purpose of correcting, modifying, or vacating it but in order to obtain specific relief against which the judgment stands as a bar. *Boudreaux Civil Ass'n v. Cox*, 882 S.W.2d 543, 549 (Tex. App.—Houston [1st Dist.] 1994, no pet.). In other words, a "collateral attack" is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Kortebein v. American Mut. Life Ins. Co.*, 49 S.W.3d 79, 88 (Tex. App.—Austin 2001, pet. denied); *see also Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex. 1969). For all of the reasons, points of error fourteen, fifteen, and sixteen are overruled.

30

**Continued Treatment After Conviction?**

In point of error nineteen, appellant states: "The Creation of a Criminal Offense by chapter 841, which does not provide for continued treatment while incarcerated violates substantive due process. Health and Safety Code § 841.085."

All that appellant offers in support of his contention is:

> Substantive due process is violated when a legal provision is downright irrational. *Hudson v. U.S.*, 522 U.S. 93, 103 (1997). As discussed elsewhere herein, where appellant argues that Chapter 841 is excessive in relation to its nonpunitive purposes, no provision is made for an individual convicted under § 841.085 to continue receiving treatment while incarcerated. The creation of such a law defeats both nonpunitive stated purposes of protecting the public and providing treatment and so, is irrational. *Id*. This Court should hold § 841.085 unconstitutional for its failure to provide substantive due process. Appellant requests an acquittal.

This type of briefing does not comply with our briefing rules. Tex. R. App. P. 38.1(b), (h). Nothing is presented for review.

Appellant does not explain what constitutes "continued treatment." It is certainly not clear that appellant is contending that there are no laws touching on treatment or "continued treatment" for those convicted under section 841.085. Appellant seems to urge a lack of substantive due process where chapter 841 does not itself expressly provide for "continued treatment" after conviction. Certainly, the federal constitution does not require a state to write all of its civil commitment rules in a single statute or forbid it to write separate statutes to cover different classes of prison inmates. *See Hendricks*, 521 U.S. at 377 (Breyer, J., dissenting). Point of error nineteen is overruled.

31

**Due Process**

In point of error twenty, appellant asserts: "Chapter 841 of the Health and Safety Code violates substantive due process by making those persons whose behavioral abnormality does not make them a menace to public subject to commitment."

Appellant does not attack his criminal conviction under section 841.085 but challenges the general system of civil commitment under chapter 841. Appellant should have raised this contention in his appeal from the judgment of civil commitment. *See In re: Adams*, 122 S.W.3d 451 (Tex. App.—Beaumont 2003, no pet.). Raising the contention now in a collateral attack upon the criminal judgment is not permitted.

Moreover, the contention was not raised at trial of the instant offense. The contemporaneous objection rule generally applies to due process violations raised for the first time on appeal. *See Jaenicke v. State*, 109 S.W.3d 793, 795-96 n.3 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Hull v. State*, 67 S.W.3d 215, 217-18 (Tex. Crim. App. 2005); *Rogers v. State*, 640 S.W.2d 248, 263-65 (Tex. Crim. App. 1981); *Washington v. State*, 71 S.W.3d 498, 499-500 (Tex. App.—Tyler 2002, no pet.).

Further, appellant argues that chapter 841 effectively sweeps up those who do not have serious difficulty in controlling their behavior and pose no serious risk to the public along with those who do. Appellant contends that civil commitment under chapter 841 is limited to those individuals whose behavior abnormality constitute them a menace to society, yet other provisions of chapter 841 destroys this assumption. He urges that if individuals who have been civilly committed are capable of outpatient treatment by working and "mingling with the public," they have

32

control over the abnormality for which they were initially committed and do not pose a serious threat to the public.

In the midst of appellant's argument, he switches to the release provisions of chapter 841, claiming that it is impossible to know what circumstances will trigger the release of those who did not pose a serious threat to the public when originally committed. Combining more than one contention in a single point of error risks rejection on the ground that nothing is presented for review. *See Dunn v. State*, 951 S.W.2d 478, 480 (Tex. Crim. App. 1997); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Martinets v. State*, 884 S.W.2d 185, 189 (Tex. App.— Austin 1996, no pet.). In light of all the circumstances, we will not address the multifarious point. Point of error twenty is overruled. Appellant's attacks upon chapter 841 generally have been foreclosed by the Texas Supreme Court's opinion in *Fisher*, 164 S.W.3d at 653.

## The Lack of a Specific Finding

In point of error twenty-one, appellant asserts that the trial court did not have jurisdiction over appellant "as his original commitment order was invalid." Appellant argues that the order did not contain a specific finding that appellant had previous difficulty in controlling his behavior. Appellant relies upon *Kansas v. Crane*, 534 U.S. 407 (2002), which held that, with respect to the civil commitment of sexual offenders under the Kansas "sexually violent predator" statute, the federal constitution required proof that such offenders had serious difficulty in controlling their behavior. *Id*. at 413. Appellant argues that, since the instant commitment order did not contain a finding of serious difficulty in controlling his behavior, the order was invalid, rendering the civil

commitment void and freeing appellant from criminal prosecution under section 841.085. Appellant asserts that the trial court was thus without jurisdiction.

There was no plea to the jurisdiction, and no trial objection was made to the commitment order when it was introduced into evidence. Lack of jurisdiction by the court over the subject matter or the person can be raised for the first time on appeal. *See Gallagher v. State*, 690 S.W.2d 587, 588-89 (Tex. Crim. App. 1985); 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 42.258 (West 2001). Lack of jurisdiction is a fundamental error, *Stine v. State*, 908 S.W.2d 429, 431 (Tex. Crim. App. 1995), and a denial of absolute systemic requirements that do not require a timely and specific objection to raise for the first time on appeal. *See Aldrick v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003); *Rodriguez v. State*, 71 S.W.3d 800, 802 (Tex. App.—Texarkana 2002, no pet.); *Rushing v. State*, 50 S.W.3d 715, 723 (Tex. App.—Waco 2001), *aff'd*, 85 S.W.3d 283 (Tex. Crim. App. 2002).

It is not clear how appellant translates *Crane*'s requirement of "proof of serious difficulty in controlling his behavior" into a requirement of a mandatory recital in a civil commitment order. Proof may be evident from the record of a civil commitment hearing, but must a recital of that proof be included in the commitment order to render the order valid? We shall, however, examine the background of *Crane* upon which appellant relies.

In *Kansas v. Hendricks*, 521 U.S. 348 (1997), the United States Supreme Court upheld the validity of the Kansas "sexually violent predator" statute under the due process clause of the Fourteenth Amendment to the United States Constitution. The statute provided for the involuntary civil commitment of persons who (1) had been convicted of or charged with a sexually

violent offense, and (2) suffered from a mental abnormality or personality disorder that made the persons likely to engage in predatory acts of sexual violence.

Five years after *Hendricks*, the Supreme Court was asked again to consider an issue relating to involuntary commitment under the Kansas act. Must the State always prove that a dangerous individual is completely unable to control his behavior? *See Crane*, 534 U.S. 407. The "inability to control behavior" construct came from *Hendricks*, where the court held that the Kansas act required proof that it is difficult, if not impossible, for the person to control himself. *Hendricks*, 521 U.S. at 358. *Crane* argued that the State must show a total lack of control while the State contended that no lack of control showing was required. *Crane*, 534 U.S. at 411.

The *Crane* opinion observed that the broad "difficult, if not impossible," language as used in its *Hendricks* opinion was not absolute. It rejected an absolutist approach as unworkable. *Id*. at 411-12. The *Crane* court further observed:

> [W]e did not give to the phrase "lack of control" [in *Hendricks*] a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be *proof of serious difficulty in controlling behavior*. And this, when viewed in light of such features of the case as the *nature of the psychiatric diagnosis*, and the *severity* of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose *serious* mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Id*. at 413 (emphasis added).

The court recognized that its interpretation of *Hendricks* provided a less precise constitutional standard than the more definite rules advanced by the parties. The court then stated:

"But the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." *Id*. at 413.

In refusing to adopt bright-line rules, the *Crane* court gave two reasons. First, the States retain considerable leeway in defining mental abnormalities and personality disorders that make an individual eligible for commitment. Second, "the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever advancing science, whose distinctions do not seek precisely to mirror those of the law." *Id*. (citations omitted).

Appellant relies upon *Crane*'s holding that required "proof of serious difficulty in controlling behavior" before a person can be civilly committed as a sexually violent predator. *Id*. Appellant, however, does not discuss the case-by-case analysis approach adopted by the court in *Crane*.

In *In re: Commitment of Browning*, 113 S.W.3d 851 (Tex. App.—Austin 2003, pet. denied), the defendant claimed that the trial court erred in refusing to submit a question to the jury asking whether he had serious difficulty in controlling his behavior. He claimed that the failure to submit the question ran afoul of *Crane*. This court responded:

> The charge of the court in this case included the following question: "Do you find that William P. Browning suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?" The charge also defined behavioral abnormality in accordance with the statute: "Behavioral abnormality means a congenital or acquired condition that by affecting a person's emotional or volitional capacity predisposes the person to commit a sexually violent offense to the extent that a person becomes a menace to the health and safety of another person." We hold that this broad-form submission encompassed the required lack-of-control determination. A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has "serious difficulty in controlling

36

behavior." *Cf. Mullens*, 92 S.W.3d at 884-87 (evidence relating to defined abnormality legally sufficient to prove serious difficulty in controlling behavior).

*Crane* undoubtedly requires a lack-of-control determination to be made by the jury. However, it does not require that determination to be made in a specific, independent finding. *See In re Detention of Harry Cain*, 792 Ill.App.3d 800, 804-05, 275 Ill.Dec. 325, 792 N.E.2d 800, (2003). We overrule Browning's second issue.

*Browning*, 113 S.W.3d at 862-63, *accord In re: Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied) (concluding also that the broad-form of jury submission constitutes a sufficient lack-of-control determination). Both *Almaguer* and *Browning* found no violation of *Crane* as the jury submission and jury finding supported by evidence satisfied the due process clause of the Fourteenth Amendment.

The commitment order introduced in evidence at the instant criminal trial reflects that appellant was civilly committed under chapter 841 of the Texas Health and Safety Code on October 2, 2002, in the 221st District Court of Montgomery County. Neither the record of the trial court nor the record of the appeal from the judgment and order are in this appellate record. We are aware that appellant's civil commitment was affirmed on appeal. *See In re: Commitment of Adams*, 122 S.W.3d 451, 454 (Tex. App.—Beaumont 2003, no pet.).

"At the commitment hearing, a jury found Adams suffers from a behavior abnormality making him likely to engage in a predatory act of sexual violence. The judgment and order were entered based on the jury's finding." *Id*. at 452. Appellant raised five issues on his appeal from the civil commitment. In disposing of the second issue, the Beaumont court wrote:

Adam's second issue claims that due process was violated when the trial court refused to submit the issue of volitional control to the jury. A divided Court recently

decided this issue adversely to Adams. *Almaguer*, 117 S.W.3d at 502-506; *Graham*, 117 S.W.3d at 515; *Shaw*, 117 S.W.3d at 524-25. In all three cases, we held that the definitions provided by the trial court adequately presented the issue to the jury and thus satisfied due process. *Almaguer*, 117 S.W.3d at 505; *Graham*, 117 S.W.3d at 515; *Shaw*, 117 S.W.3d at 524. Because a separate instruction on volitional control is not required under *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002), issue two is overruled.

*Adams*, 122 S.W.3d 452-53.

It appears that appellant's contention in substance has already been decided adversely to him. Appellant has advanced a jurisdictional question because of a lack of finding in the commitment order itself that appellant had previous difficulty with his behavior. *Crane* did not concern itself with the requirements of a commitment order, and appellant has offered no authority that the claimed defect in the commitment order deprived the trial court of jurisdiction. Point of error twenty-one is overruled.

## Legal Sufficiency Once Again

In point of error twenty-two, appellant contends that the evidence was legally insufficient to show that appellant violated a valid commitment order. Appellant briefed this contention together with the preceding point of error twenty-one. After restating his argument about the validity of the commitment order, appellant simply adds: "Further, the State failed to prove beyond a reasonable doubt that appellant violated a valid order. An acquittal based on the legal sufficiency of the evidence is required under *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)." There has been no compliance with our briefing rules. Tex. R. App. P. 38.1(b), (h). If the commitment order was involved as appellant argued in the earlier point of error and the court was

deprived of jurisdiction, the legally sufficiency of evidence issue would be moot. If the commitment order is valid despite appellant's challenge, as we have held, the sufficiency issue based solely on the invalidity of the order is not reviewable. Point of error twenty-two is overruled.

## A Constitutional Challenge

In point of error twenty-three, appellant contends that "Chapter 841 of the Health and Safety Code violates rights guaranteed under the 5th and 14th Amendments to the U. S. Constitution."

As stated, this point asserts a broad facial challenge to chapter 841, not a single statute. Appellant made no issue of the constitutionality of chapter 841 in the trial court. *See* Tex. R. App. P. 33.1. If the contention can be raised on appeal for the first time, appellant has the heavy burden of showing the unconstitutionality of the chapter and must overcome the presumption of the validity of the statute, or as here, the entire chapter. *See Ex parte Granuil*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex. App.—Austin 1995, pet. ref'd).

Appellant has not briefed the contention as stated. In his brief, appellant makes an "as applied" challenge to the constitutionality of sections 841.082 and 841.095 of chapter 841 as those sections apply to him in the instant case. Appellant urges that any refusal by him to participate in the treatment-supervision requirements of his civil commitment would subject him to a new criminal conviction and additional incarceration. He limits his claim under the Fifth Amendment to violations of his privilege against self-incrimination.

An "as applied to the defendant" constitutional challenge to the statute cannot be raised for the first time on appeal; it must be raised in the trial court. *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995); *Bader*, 15 S.W.3d at 603; *McGowan v. State*, 938 S.W.2d 732, 738 (Tex. App.—Houston [14th Dist.] 1996), *aff'd on other grounds*, 975 S.W.2d 621 (Tex. Crim. App. 1998). The claim was not preserved for review. *State v. West*, 20 S.W.3d 867, 872 (Tex. App.—Dallas 2000, pet. ref'd); *see also Hooper v. State*, 106 S.W.3d 270, 273-74 (Tex. App.—Austin 2003, no pet.).

Appellant cites and distinguishes *McKune v. Lile*, 536 U.S. 24 (2002). This does not resolve the preservation of error issue. *Lile* held that the Kansas rehabilitation program for sex offender prison inmates and the consequences for an inmate's nonparticipation in the program did not create compulsion that violated an inmate's Fifth Amendment privilege against self-incrimination. *Id*. at 29, 48. Appellant argues that he was not in prison but restrained under an outpatient civil commitment and that the *Lile* opinion is inapplicable to him.

The evidence does not show that appellant objected to or refused to participate in the treatment-supervision program. We do not understand appellant to so claim.

Appellant asserts that his unspecified self-incriminating statements made while participating in the program resulted in the instant criminal prosecution.

The Fifth Amendment is not self-executing; the privilege against self-incrimination must be asserted. *In re: Vertiois*, 10 S.W.3d 825, 828 (Tex. App.—Waco 2000, orig. proceeding). Appellant did not object to any trial testimony concerning statements made by him on the basis of the Fifth Amendment. Any error was waived. Tex. R. App. P. 33.1. Even constitutional error may

be waived. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Moreover, appellant voluntarily testified and acknowledged most of his statements which had been introduced by the State into evidence. Point of error twenty-three is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Affirmed

Filed: November 4, 2005

Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).