430-15

IN THE

TEXAS COURT OF CRIMINAL APPEALS

AUSTIN - TEXAS

NO. PD-0430- 15

ORIGINAL

ON APPEAL FROM CAUSE NO. 2012-0431

FROM THE 217TH CRIMINAL DISTRICT COURT

OF ANGELINA COUNTY TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 10 2015

Abel Acosta, Clerk

DISCRETIONARY REVIEW TAKEN FROM THE

TWELFTH COURT OF APPEALS

TYLER- TEXAS

APPEAL NO. 12-14-00112-CR

APPELLANT'S PRO SE PETITION FOR DISCRETIONARY REVIEW

*Calvin Rushing*

CALVIN LOUISE RUSHING
TDCJ-ID# 1925565
ALLAN B. POLUNSKY UNIT
3872 FM 350 SOUTH
LIVINGSTON, TEXAS 77351

APPELLANT [PRO-SE] ON PETITION
FOR DISCRETIONARY REVIEW [ONLY]

FILED IN
COURT OF CRIMINAL APPEALS

JUN 10 2015

Abel Acosta, Clerk

ORAL ARGUMENTS NOT REQUESTED:

-i-

## STATEMENTS REGARDING ORAL
## ARGUMENTS

Appellant does not seek nor request **Oral Argument** in this case, unless other wise sought by Appellee's, or ordered by The **Honorable Justices** of The Texas Court Of Criminal Appeals, as Appellant firmly believes that the issues herein submitted and/or raised by Appellant in his **Petition For Discretionary Review,** can be determined and/or decided upon review of the official trial/appellate records, including decided based upon established legal precedent cited and presented by Appellant in support of Discretionary Review without the need of Oral Arguments. [SEE:] **Texas Rule Of Appellate Procedure, Rule 39.7;** and **Texas Rule Of Appellate Procedure, Rule 68.4[C].**

Furthermore, in compliance with **Texas Rule Of Appellate Procedure, Rule 68.4[CONTENTS OF PETITION],** all due care and diligent has been made by this Appellant to make this **Petition For Discretionary Review** as brief as possible. SEE ALSO: Texas Rule Of Appellate Procedure, Rule 68.6, which provides in relevant part, that The Court may strike, order redrawn, or summarily refuse a petition for discretionary review that is 'Unnecessarily Lenghty' or that does not conform to the rules.

# TABLE OF CONTENTS:

ITEMS:                                                                    PAGES:
TABLE OF CONTENTS....................................................... -iii-
STATEMENT REGARDING ORAL ARGUMENT....................................... -ii-
INDEX OF AUTHORITIES.................................................... - iv-
PRELIMINARY STATEMENT OF THE CASE....................................... 1
STATEMENT OF THE CASE.................................................. 3
STATEMENT OF PROCEDURAL HISTORY........................................ 3
PRAYER FOR RELIEF..................................................... 18
CERTIFICATE OF SERVICE................................................ 19
GROUNDS FOR DISCRETIONARY REVIEW...................................... 4,17

## GROUND FOR REVIEW NO. ONE:

WHETHER THE TWELFTH COURT OF APPEALS [SITTING, PER CURIAM] HAS
ISSUED AND/OR DECIDED AN IMPORTANT QUESTION OF SATE OR FEDERAL
LAW [ON IDENTIFICATION PROCEDURES], WHICH HAS NOT BEEN, BUT SHOULD
BE SETTLED BY THE TEXAS COURT OF CRIMINAL APPEALS[TEX.R.APP.PROC., RULE
66.3[B]........................................................................ 4

## GROUND FOR REVIEW NO. TWO:

WHETHER THE PER CURIAM DECISION ISSUED BY THE TWELFTH COURT OF
APPEALS IN THIS CASE HAS SO FAR DEPARTED FROM THE ACCEPTABLE  AND
USUAL COURSE OF JUDICIAL PROCEEDINGS, OR SO SANCTIONED SUCH A
DEPARTURE BY A LOWED COURT AS TO CALL FOR AN EXERCISE OF THE TEXAS
COURT OF CRIMINAL APPEALS' POWER OF SUPERVISION [TEX.R.APP.PROC., RULE
66.3[F]........................................................................ 4

## GROUND FOR REVIEW NO. THREE:

WHETHER THE TWELFTH COURT OF APPEALS [PER CURIAM] DECISION COMES
INTO CONFLICT WITH THE UNITED STATES SUPREME COURT'S "DUE PROCESS"
STANDARD ANNOUNCED IN, JACKSON V. VIRGINIA, REQUIRING EVIDENCE TO
BE BOTH LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN CONVICTION[AS
IN THIS CASE THE EVIDENCE WAS LEGALLY AND FACTUALLY INSUFFICIENT
TO SUSTAIN TRIAL COURT'S AFFIRMATIVE FINDING OF A DEADLY WEAPON].. 17

# INDEX OF AUTHORITIES:

| CASES: | PAGE: |
|---|---|
| Adams V.State, 222 S.W.3d 37(Tex.App.-Austin)......... | 4 |
| Abdur Raheem V. Kelly, 257 F.3d 122[2d Cir.2001]...... | 11 |
| Broom V. Mitchell,441 F.3d 352[6Th Cir.2006].......... | 9 |
| Brooks V. State, 323 S.W.3d 893[Tex.Cr.App.2012]....... | 18 |
| Cantu V. State,738 S.W.2d 249[Tex.Cr.App.1987].......... | 15 |
| DElk V.State, 855 S.W.2d 700[Tex.Cr.App. 1993].......... | 9,10,11,15 |
| Ibarra V.State, 11 S.W.3d 189[Tex.Cr.App.1991].......... | 9,10,11 |
| In Re Winship, 397 U.S.351[1970]........................ | 17,18 |
| Luckette V.State,906 S.W.2d 663[Tex.App.Amarillo 1995].... | 17 |
| Loserth V.State,985 S.W.2d 536[Tex.App-San Antonio 1998].. | 9,10,11 |
| Kirby V.Illinois, 406 U.S. 6821972].................... | 14 |
| Manson V. Braithwaite,97 S.CT. 2343[1977]............... | 15 |
| Maxwell V.State, 10 S.W.3d 785[Tex.App.-Austin 2000]....... | 13 |
| McFarland V. State,928 S.W.2d 482[Tex.Cr.App.1996]........ | 11 |
| Moore V. Illonios, 434 U.S. 220[1977].................... | 14 |
| Neil V. Biggers,93 S.CT. 375[1972]...................... | 15,18 |
| Sapp V.State, 476 S.W.2d 321 [Tex.Cr.App.]............... | 13 |
| Simmons V. United States,390 U.S. 377[1968]............... | 14 |
| Tillman V.State,No.14-08-00846-CR, 2010, Tex.-App. Lexis 4013 [Tex.App.-Hou. 14Th Dist. 2010]........................ | 16 |
| Thompson V. Louisville, 80 S.ct. 62[1960]................. | 18 |
| United States V. Brownlee,454 F.3d 131[3d.Cir.2001]...... | 15 |
| United States V.Emnauel, 51 F.3d 1123[3d.Cir.2006]...... | 15 |
| United States V. Deleon,588 F.3d 748[1st Cir.2009]....... | 8 |
| Wray V.Johnson, 202 F.3d 515[2d Cir.2000]................ | 9 |
| United States V. Wade, 87 S.Ct. 1926[1967]............... | 14 |

## CONSTITUTIONAL PROVISIONS:

| ARTICLES: | PAGES:- |
|---|---|
| TEXAS CONSTITUTION ARTICLE ONE, SECTION TEN.............. | 4 |
| TEXAS CONSTITUTION,ARTICLE ONE, SECTION NINE.............. | 4 |
| TEXAS CONSTITUTION,ARTICLE ONE, SECTION NINETEEN........... | 4 |
| | |
| U.S. CONSTITUTION AMENDMENT, FIFTH......................... | 4,7,12,13 |
| U.S. CONSTITUTION AMENDMENT, SIXTH......................... | 4,5,7,11,12 |
| U.S. CONSTITUTION AMENDMENT, FOURTEENTH.................... | 18 |

| STATUTES: | PAGES: |
|---|---|
| TEXAS RULE OF APPELLATE PROCEDURE, RULE 39.7.............. | -ii- |
| TEXAS RULE OF APPELLATE PROCEDURE, RULE 68.4.............. | -ii- |
| TEXAS RULE OF APPELLATE PROCEDURE, RULE 66.3[B]............ | 1,4 |
| TEXAS RULE OF APPELLATE PROCEDURE, RULE 66.3[F]............ | 1,4 |
| TEXAS CODE CRIMINAL PROCEDURE, ARTICLE 38.20.............. | 16 |

IN THE

TEXAS COURT OF CRIMINAL APPEALS

PDR# 0430-15

| | | |
|---|---|---|
| CALVIN LOUISE RUSHING, | § | PETITION FOR DISCRETIONARY REVIEW |
| APPELLANT, | § | FROM THE TWELFTH COURT OF APPEALS |
| VS. | § | TYLER, TEXAS |
| THE STATE OF TEXAS, | § | APPEAL NO. 12-14-00112-CR |
| APPELLEE. | § | TRIAL COURT CAUSE NO. 2012-0431 |

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

GREETINGS-

TO THE TEXAS COURT OF CRIMINAL APPEALS:

Now comes, **Calvin Louise Rushing**, Appellant, proceeding pro-se in the foregoing entitled numbered cause of action, who in accordance with **Texas Rules Of Appellate Procedure, Rule[s] 66.3[B], and 66.3[F]**, and hereby files and submits this, 'Petition For Discretionary Review', to The Texas Court Of Criminal Appeals; And in support of same, the Appellant will show unto The Court as follows:

I.

PRELIMARY STATEMENT OF THE CASE

AND PRESENTATION OF THE ISSUES FOR REVIEW

1- This cause of action commenced on **March 5,2014[RR.VOL.I.,p. 3]**, upon Appellant's plea of not guilty to the first degree felony offense of, **Aggravated Robbery** in indictment #2012-0431. The Appellant waived a jury trial [**CR. VOL.I.,p. 35**], and the presiding judge after a **Non-jury** trial found Appellant guilty of the indicted offense[**CR.VOL.I.,p. 6**]. During the punishment phase, the Appellant plead true[**Guilty**] to four enhancement paragraphs in the indictment[**RR.VOL.III.,P. 5,6**]; Afterward, The presiding judge finally sentenced Appellant to **fifty[50]** years imprisonment in The Texas Department Of Criminal Justice- Institutional Division]cr.vol.I.,p. 95, 96; RR.VOL. III.,p. 10]. Timely notice of appeal was given on **April 29,2014[CR.VOL.I.,p. 97,98]**.

2- **The Twelfth Court Of Appeals** on March 25Th,2015, in an **unpu-lished opinion** affirmed the judgement of the convicting court.

3- **The Twelfth Court Of Appeals** in its' **March 25Th,2015 [Per Cur-iam]** panel decision **[In-Part]** opined regarding Appellant's first [1st] point of error raised on [D]irect- Wherewith, Appellant argured, that he had been denied 'DUE PROCESS' by the trial court's consideration of an 'Impermissible In-Court Identification; Thereinwith, The Twelfth Court Of Appeals ruled, that **An In-Court Identification Is Inadmiss-ible If It Had Been Tainted By An Impermissibly Suggestive Pre-trial Identification Process;** Thus, in finding against this Appellant, **The Twelfth Court Of Appeals** found that the **pre-trial 'Photo Array'** and/or showing of store's security video surveillance tapes to robbery victim [EyeWitness], within seconds, minutes or hours before trial[The Ini-tial Identification Process], was not 'Impermissibly Suggestive - obviating the need of The Court in conducting any HARM analysis and/or dispense with the need in determining whether identification process created any **likelihood of Misidentification**[See: Twelfth Court Of Appeals, **SLIP OPINION**, at p. 3-THRU- 6].

4- Based upon the above **unsound reasoning** of The Twelfth Court Of Appeals, the Appellant respectfully submits, that **The Twelfth Court Of Appeals decision** in rejecting Appellant's legal contentions raised on appeal and in affirming the conviction of the convicting court was issued in 'Error'; Therefore, Petition For Discretionary Review should issue to "Correct'" **The Twelfth Court Of Appeals** erronerous **Adoption, Creation, Or Mistake** in the law.

-2-

## II.
## STATEMENT OF THE CASE

Appellant, **Calvin Louise Rushing**, was indicted by felony indictment with allegedly committing on **May 20,2012**, the felony offense of, **Aggravated Robbery** in cause # 2012-0431[CR.VOL. I., p. 35; RR. VOL. I., p. 3]. On **March 5Th,2014**, Appellant plead not guilty to the instant felony offense[RR. VOL. I.,p. 30] The trial court after a **non-jury** trial found Appellant guilty of the indicted offense and assessed Appellant's punishment at **fifty[50]** years in prison, including making an **affirmative finding** of a deadly weapon[CR.VOL. I., p. 95, 96; RR. VOL. III.,p. 10].

## III.
## STATEMENT OF PROCEDURAL HISTORY

The Appellant, **Calvin Louise Rushing**, on **April 29, 2014**, timely and orally gave [**Written**] notice of appeal to The Twelfth Court Of Appeals[**CR. VOL. I.,p. 97,980**]. The Twelfth Court Of Appeals in an **Unpublished Opinion** delivered on **March 25Th, 2015**, affirmed the judgement of the convicting court, and when Appellant finally received written [Notification] of affirmance of his conviction from his court-appointed appellate Attorney [**John Reeves**], via United States Postal Service[**TDCJ-ID OFFENDER LEGAL MAIL SYSTEM**], the time limits for the Appellant to had sought 'Rehearing' had expired; Therefore, no **Motion For Rehearing** has been sought nor filed by this Appellant[See: **Texas Rules Of Appellate Procedure, Rule 49.9**].

# IV.

### GROUND FOR REVIEW NO. ONE:

WHETHER THE TWELFTH COURT OF APPEALS[ACTING - PER CURIAM] HAS ISSUED AND/OR DECIDED AN IMPORTANT QUESTION OF **STATE** OR **FEDERAL** LAW [ ON IDENTIFICATION PROCEDURES] IN SUCH A MANNER WHICH HAS NOT BEEN, BUT SHOULD FIRST BE DETERMINED AND/OR DECIDED BY THE TEXAS COURT OF CRIMINAL APPEALS [SEE: TEXAS RULE OF APPELLATE PROCEDURE, RULE 66.3[B] ]

### GROUND FOR REVIEW NO. TWO:

WHETHER THE [PER CURIAM] DECISION-OPINION THAT WAS ISSUED IN THIS CASE BY THE TWELFTH COURT OF APPEAL HAS SO DEPARTED FROM THE **ACCEPTABLE** AND USUAL COURSE OF JUDICIAL REASONING, OR HAS SO FAR SANCTIONED SUCH A **DEPARTURE** BY A LOWER COURT AS TO CALL FOR AN EXERCISE OF THE TEXAS COURT OF CRIMINAL APPEALS **POWER OF SUPERVISION** [ SEE: TEXAS RULE OF APPELLATE PROCEDURE, RULE 66.3[F]].

-----------------------------------------------------------------------

Appellant for brevity purposes, joins together his grounds for discretionary review #1 and # 2, based upon similar, legal and factual issues contained therein; **However,** such grounds **are** numbered separately so as to not confuse The Court as multifarious grounds. [SEE: ADAMS VS. STATE, 222 S.W.3d 37, 53 (Tex. App.-Austin 2005) ].

## CASE ANALYSIS:

Appellant, Calvin Louise Rushing, on direct appeal argued to The Twelfth Court Of Appeals[**Tyler, Texas**], [1] that he had been denied his

------

1/. Appellate Counsel Incorrectly Argued On Appeal Denial Of 'DUE PROCESS' Under The **Sixth Amendment,** Instead Of Arguing A **Fifth Amendment** Denial Of 'DUE PROCESS'

-4-

rights to 'DUE PROCESS' under The Sixth United States Constitutional Amendment by the trial court's consideration of an 'Impermissible In-Court' identification process that was tainted and not based on an "Idependent Factor" aside from the robbery victim [Eyewitness] on the eve of Appellant's robbery trial being allowed to view State's Security Video Surveillance [Evidence] Tapes [From The Robbed Store], and 'still photographs' of an individual that resembled Appellant; Furthermore, Appellant also argued on [D]irect appeal review, that robbery witness's In-Court identification of this Appellant was not consistent with robbery victim's identification of this Appellant immediately following robbery when Appellant was apprehended by the police. [See: APPELLANT'S BRIEF, at p. 12-Thru- 19].

The State [Appellee's], in responding to Appellant's legal arguments and/or point of error raised and briefed on appeal concluded with three[3] Appeal Court Justices for The Twelfth Court Of Appeals in agreeing with Appellee's by conceding in affirming Appellant's conviction, that there weren't presently any written applicable case law authority directly on point and/or similar with Appellant's legal arguments [Position], which Appellant's legal contentions were that Appellant's trial prosecutors denied Appellant his rights to 'DUE PROCESS' by the prosecutors[Instead Of Police], conducting the photo array identification process, including prosecutors conducting the live [In-Court] identification process in this case on the eve of this Appellant's criminal trial. [RR. VOL. I., p. 55-THRU_-67]; See Also: [Twelfth Court Of Appeals, Slip Opinion, p. 5-THRU- 6].

With the above 'Back-Drop' in mind, a three[3] justice panel for The Twelfth Court Of Appeals in so agreeing with Appellee's- resulted in The Twelfth Court Of Appeals [Finding There Existed No Authority], causing The Twelfth Court Of Appeals finding NO distorting or corrupting effects how the photo array identification process was held, or conducted in this case, including The Twelfth Court Of Appeals ruling, that because the pre-trial photo array was not impermissibly suggestive, then the In-Court live lineup [Which Proceeded The Pretrial Photo Array Process], was admissible[See: Twelfth Court Of Appeals, Slip Opinion, at p. 3-THRU- 6].

Despite The Appellee's argument in response to Appellant's point of error raised on appeal, the Appellee's argured, that even **Assuming Argumento**, that the identification process[Procedures], were **Impermissibly Suggestive**, or improperly conducted, that Appellant in any event suffered no **Harm** of irreparable misidentification[See: **State's Brief, at p. 7 -THRU- 13**]; **Nonetheless**, even in the face of such an argument by Appellee's a **Three[3]** justice panel for The Twelfth Court Of Appeals in rejecting Appellee's admittance of error, found that the **[Pre-trial]** photo array process in this case, was conducted or held properly; Also The Twelfth Court Of Appealsbasing its' decision on such a finding found the **In-Court** identification **admissible**; And thereby, **declining** to conduct any **HARM ANALYSIS**, including declining to conduct any **test** to determine whether there existed the **likelihood of irreparable misidentification** as such **declination** was in error.

## APPELLANT'S LEGAL ARGUMENTS IN SUPPORT OF DISCRETIONARY REVIEW:

The Appellant, **Calvin Louise Rushing**, now seeks Discretionary Review from The Texas Court Of Criminal Appeals because this Court has not decided, but is being called upon to decide whether the **photo array** process itself and the **live in-court lineup[Which Proceeded The Photo Array]**, conducted, or held in this case by the trial prosecutors were or were not **impermissibly suggestive** nor violative of Appellant's **Fifth, Sixth** and **Fourteenth** United States Constitutional Amendment rights nor conducted in violation of Appellant's rights under The Texas Constitution, **Article One, Ssection, Nine, Ten** and **Nineteen**, as has been decided in-part by The Twelfth Court Of Appeals.

The official trial/appellate records in this case reflects, that the **photo array** and **live lineup** which took place in this entitled numbered cause of action as complained of by this Appellant did not so occur nor was conducted within a **span of seconds, minutes, hours, days, weeks** nor held within a few months of commission of the instant felony robbery offense; But the **photo array** and **live in-court lineup** that was conducted in this case was held by Appellant's trial[Assistant District Attorneys] prosecutors **within a matter of seconds, minutes, hours** and

-6-

conducted almost **two[2]** years of commission of the robbery offense allegedly committed by this Appellant; **Furthermore**, Appellant will argue, that **Both** the particular **pretrial photo array**, including the **live in-court identification lineup** were conducted 'Unbeknownst' to Appellant and his trial counsel, as **Both** the pretrial and live in-court identification procedure[s] were conducted in violation of the Appellant's rights under **The Sixth** United States constitutional amendment, including conducted in violation of Appellant's **Fifth** United States constitutional amendment right to 'Due Process'.

**Equally**, as well, Appellant's legal arguments raised on appeal were **primed**, or **premised** alone the lines, that the trial prosecutors after conducting and holding their **One-One-One** [**Pretrial Single Showing**], showing of Appellant's picture to the robbery victim, then the trial prosecutors' would arrange for the robbery victim[ **Unbeknownst To Appellant**], to be sneaked into the courtroom where Appellant was to stand trial in a matter of seconds, minutes or hour for the sole purpose of robbery victim[**From Robbery Victim's Place Of Concealment**] identifying Appellant when Appellant's trial began[**NOTE: Neither Has The Pretrial Photo Array Nor The Live In-Court Lineup Process Has Been Audio-Video Taped Recorded, Or Preserved For Furture Reference To Determine Whether Prosecutors' Suggested To Eyewitness To Identify This Appellant**].

**Nevertheless**, despite the fact that trial prosecutors' conducted a **One-On-One** overly suggestive **pretrial identification** process with robbery victim, including the fact of the trial prosecutors' holding a **live in-court** identification process with the robbery victim- where Appellant and no other individual [**African-American**], was seated in the courtroom, as **Both** The Appellee's and **three[3]** Justices for The Twelfth Court Of Appeals could find **nothing constitutionally** wrong nor improper concerning the manner in which trial prosecutors' held **pretrial photo identification process**, nor **anything wrong with how prosecutors' would choose to conduct live in-court lineup**, as such findings by The Twelfth Court Of Appeals resulted in The Court Of Appeals <u>Crafting</u> **and/or** <u>Creating</u> [**Legislaturing From The Bench**], new

-7-

identification laws or other additional identification laws when The Twelfth Court Of Appeals does not possess the **constitutional authority** nor legislative powers to create new or other identification law- as such action by The Twelfth Court Of Appeals is **'Judicial Activism at its'** worst.

## CONTROLLING LAWS OF IDENTIFICATION
## AS APPLIED TO THE FACTS OF THIS CASE:

While The State [Appellees'], and **three[3]** Justices for The Twelfth Court Of Appeals could find no legal precedent nor find **'Anything' constitutionally** wrong nor **'anything' overly suggestive** concerning the manner in which the **pretrial photo identification** process was conducted in this case, including The Appellees', and Three Justices of The Twelfth Court Of Appeals finding nothing wrong with how State held and/or conducted its' **live in-court lineup** in this case; And while this Appellant **'Reluctantly'** concedes to the fact, that his own diligent research **[Reading Of State And Federal]** had failed to disclose, or yield any past or present legal precedent directly on point and/or similar with the procedural or factual allegations of this Appellant's case- **Whereas,** Assistant District Attorney's **[Trial Prosecutors']**, on the eve of a criminal accused defendant's trial **[Instead Of Law Enforcent Officer- Police]**, holds or conducts identification process with robbery victim**[Eyewitness]**, while suspect identify and events are still fresh in eyewitness or victim's minds.

**However,** although this Appellant is fully legally aware of the fact, that there are **[N]o two cases factually or similarily alike; Nonetheless,** Appellant argues, that there is presently **Ample** legal precedent and/or **statutory authority** in the law books- which stands for the legal proposition, That Court's **'Condemns'** the type of [SINGLE] One-On-One [One-Man] showup as was conducted in this Appellant's case. [See For Example: <u>United States V. Deleon Quinones</u>, 588 F.3d 748(1st Cir. 2009)].

**Additionally,** Appellant argues, that it really should not matter nor make any legal difference whether it was the trial prosecutor's, or law enforcement **[Police Officers]**, who conducted or held the **pretrial**

identification process with the robbery victim[Eyewitness] in this case as The Courts' have plainly held, that identification procedure is 'Impermissibly Suggestive' whenever a criminally accused defendant is the only **individual**, or **suspect** presented before, or shown to a witness. See: <u>Broom V. Mitchell</u>, 441 F.3d 392[6Th Cir.2006].

**Also, preexisting** legal precedent states, that identification procedure is 'Impermissibly Suggestive' when a witness is shown Criminal Accused Defendant **sitting alone** at the police station. See: <u>Wray V.- Johnson</u>, 202 F.3d 515 [2d. Cir. 2000]; **Thus,** Appellant argues, that the same **rational** and/or **legal reasoning** announced in <u>Wray</u>, should likewise apply to the facts of this Appellant's **pretrial** identification process [**Photo Array**], when robbery victim, within **seconds,minutes,** or **hours** of this Appellant's robbery trial commencing was for the first time shown **'SINGLE'** still photographics [**Store's Security Video Tapes**], which consisted of individual purposed to be Appellant, and no other African-American's still photographic was shown to the robbery victim, including, trial prosecutor's then sneaking robbery victim concealed-hidden in the courtroom[**Unbeknownst To Appellant And His Attorney**], for the purpose of robbery victim to identify Appellant,who was sitting alone[**The Only African-American**] in the courtroom; **Therefore,** it is of little consequences whether robbery victim viewed defendant [**Appellant**] while seated alone in a room at the police station, or seated alone in a courtroom as such **live in-court lineup** [**Single 'One-On-One'**], should not had been allowed to happen- **Period,** nor given the **Stamp Of Approval** by the trial judge nor **Sanctioned** by a **Three[3] Justice Panel** For The twelfth Court Of Appeals.

**Even the case law precedent** relied upon by The Twelfth Court Of Appeals in their **March 25Th,2015,** ruling[**OPINION**], all dealth with defendant's in those cases arguring that conduct by police led to **Overly Suggestive In-Court** identification procedure[s];[**The Twelfth Court Of Appeals Cits,** <u>Delk V. State</u>, 855 S.W.2d 700(Tex.Crim.App. 1993); <u>Loserth V. State</u>, 985 S.W.2d 536(Tex.App.-San Antonio 1998), and <u>Ibarra V. State</u>, 11 S.W.3d 189(Tex.Crim.App. 1999)].

The **Delk** case relied upon by The Twelfth Court Of Appeals, in affirming this Appellant's case involved **Delk** arguing on appeal, that his **in-court** identification by victim was **inadmissible** and tainted due to **impermissibly suggestive** pretrial photographic array process conducted by police where witness to murder of her husband was shown a **single photograph** of accused suspect under arrest. The Texas Court Of Criminal Appeals in **Delk's**, that the trial court did not err in failing to suppress witness's **in-court identification of Delk**, because such identification was of '**Indepent Orgin**' aside from the **impermissible suggestiveness** of the pretrial photographic array process.

Furthermore, in the reported case of **Loserth**, cited and relied upon by The Twelfth Court Of Appeals in affirming this Appellant's judgement- involved a case where The Fourth Court Of Appeals[San Antonio], held that '**Display**' of single photographs of defendant to eyewitness was **impermissibly suggestive**[Pretrial] identification process which gave rise to a **very substantial likelihood of irreparable harm** and State failed to show that **in-court** identification was of independent orgin and not tainted by the pretrial identification process.

Likewise, in the case of **Ibarra**, cited and relied upon by The Twelfth Court Of Appeals in affirming this Appellant's judgement on appeal, involved a case where police conducted a **One-On-One** single photographic array process with witnesses in which witnesses stated that **Ibarra** looked familar to the murder suspect; **Thereafter**, police **twenty-five**[25] days later showed witnesses '**single photograph**' of **Ibarra**, whom police believed was the murderer- police then conducted a **live lineup** where witnesses identified **Ibarra**. At trial the witnesses testified that the **photographic array** did not influence witness decision to select **Ibarra** out of the lineup. The witness further testified, that he could identify **Ibarra** in-court and at the lineup because he **Independently** remembered **Ibarra** the day of the offense. The Texas Court Of Criminal Appealsin deciding **Ibarra**, held that in spite of the '**overly impermissibly suggestiveness**' of the photographic array process, that witnesses **in-court** identification of **Ibarra** was

-10-

of **independent orgin**, and that the trial court did not **err** in failing to suppress **in-court** identification of __Ibarra__.

Turning this Court's attention to the **single-most** common- denominator, or trait found in __Delk,__ __Loserth__ and in __Ibarra__ case law decisions cited and relied upon by The Twelfth Court Of Appeals in affirming this appellant's judgement on appeal, is that each reported case involved **police** conducting, or holding **'Condemned'** single **One-on-One pretrial** photo array and/or **live lineup** procedure where individual or single photo of accused is the only person, or photograph shown or displayed to eyewitnesses- as such **identification techniques** has been held **impermissibly suggestive**, but for other reasons explained therein, The Courts' in __Delk,__ __Loserth__ and __Ibarra__, has all found that witnesses **pretrial identification** did not effect witnesses **in-court** identification which were shown to had been made of 'independent - Orgin'; However, the robbery victim's **in-court** identification of this Appellant, **Calvin Louise Rushing**, was not shown to had been made of 'Independent- Orgin', but had been shown and birthed from its' **unconstitutional** inconception, or the **by-product** of the improper **One-On-One [Single]** individual pictorial array of person resembling this Appellant, that led to the **in-court** [One-On-One] identification process that could not stand without the **pretrial identification**. See: __Abdur Raheem V. Kelly__, 257 F.3d 122 [2d Cir. 2001].

Further, this Appellant argues, that there presently existed a **far** more greater important reason for The Twelfth Court Of Appeals to had found that the 'pretrial' photo array, including the **in-court** identification process were **constitutionally** improperly conducted, or held in this Appellant's case due to the fact, **Appellant's Sixth** amendment right to counsel had attached at the time the **pretrial photo array** and **live in-court** identification process took place and/or was conducted by Appellant's trial prosecutors'. See: __McFarland V. State,__ 928 S.W.2d 482[Tex.Crim.App. 1996].

The official trial court records in this case **reflects**, that the Appellant's trial counsel during trial 'Objected' to any identification process done of Appellant while under indictment without counsel [RR.VOL.II.,p. 38, 39].

-11-

**Additionally,** this Appellant's appellate counsel on appeals had argued and alleged, that the **pretrial** and **in-court** identification was in violation of Appellant's 'DUE PROCESS' rights pursuant to the **Sixth Amendment** to the United States Constitution[**Although Their Is No 'DUE PROCESS' Provision Under The Sixth United States Constitutional Amendment- But A 'Right' To Presence Of Counsel Exist Under The "Sixth" Amendment At Every Critical Stage Of The Criminal Proceedings- The Appellee's And The Twelfth Court Of Appeals Was Fully Knowledgeable Or Aware Of The Issues Complained About**][See: Appellant's Brief, at p. 13].

**Furthermore,** even the robbery victim was knowledgeable of the fact, that the day prosecutors' had robbery witness identify this Appellant **[Pretrial]** and in **open-court-** robbery victim was aware of the fact that Appellant had already been **indicted and set for trial** [RR.VOL.II.,p. 69].

The Appellee's **[State]** in a **feeble** attempt to **squirm** their way out of the **Sixth** amendment violation which occurred in this case when the trial prosecutors' conducted and/or held **pretrial** photo identification process, including conducting and/or holding their **in-court identification** process in this case after Appellant had already been indicted, The State[**Appellee's**] on appellate review **candidly** implies, or infers, that witness viewing store's security surveillance tapes, and still photographs to **refresh** a witness's memory is not an identification- and even if there was a pretrial identification process made the morning of the trial such was not **impermissibly suggestive** be cause of the short time between the **pretrial** identification and the **in-court identification**[See: State's Brief, at p. 5-THRU- 10]; The Twelfth Court Of Appeals, in its' **March 25Th,2015,** opinion, noted, that the robbery victim was allowed to review surveillance video alone with **numerous photographs** made from the surveillance video[see: **Twelfth Court Of Appeals, Slip Opinion,** at p. 5]; The State[**Appellee's**], are arguring both ways, by first arguing, that there was no **pretrial** identification process, and even if there was a **pretrial** identification process, there was no **Irreparable Harm**[See: State's Brief, at p. 5, 6, 7, 13][The Appellee's Can't Have It Both Ways].

-12-

The Appellee's [State], appears to argue, and firmly hides behind the fact, that the [Mere] showing to a witness[Still Photographics], from a store's security surveillance video-camera to refresh a witness's recollection, is not an identification procedure [See: State's Brief, at p. 6]; However, a fact previously noted by The Twelfth Court Of Appeals, and conceded to by this Appellant, is the fact of the matter, that this Appellant possessed [N]o statutory, or constitutional right to either 'demand', or 'command' police, or trial prosecutors' to conduct or hold any pretrial photographic identification process, and neither does this Appellant possess any right to 'command', or 'demand' police or prosecutors' to hold or conduct any live lineup process[See: Sapp V. State, 476 S.W.2d 321(TeX.Crim. App Austin 2000)]; Maxwell V.State, 10 S.W.3d 785(tEX.App.-Austin 2000].

Nonetheless, once a pretrial photographic array or live lineup is conducted in a case after a criminal defendant has been indicted, then the defendant, such as this Appellant, possessed the 'valuable-right' pursuant to the Sixth United States constitutional amendment to have the presence of counsel during said identification procedures conducted by police, or The State[Trial Prosecutors'], this is so, because the 'Due Process' clause of the Fifth United States constitutional amendment grants Appellant the right to presence of counsel during all critical stages of the criminal proceedings[After Indictment Is Returned], including having counsel presence during any pretrial photographic line up, or live lineup- as the presence of counsel would had contributed to the 'fundamental fairness' of the identification process now under constitutional challenge by Appellant [See: Twelfth Court Of Appeals, Slip Opinion, at p. 6].

The official trial court records clearly reflects, that during the period of time trial prosecutors' held, or conducted pretrial photographic showup, including holding and/or conducting live in-court identification process in this case, that neither times was Appellant's trial counsel 'adequately notified' of the photographic showup nor notified when the in-court identification would then take place; Therefore, during 'Both identification procedure[s], Appellant was 'Without Counsel'[RR.VOL. II., p. 38, 39].

**Adversary** judicial [Criminal] proceedings are considered to begin after formal **charges** are filed, **preliminary** hearing, **indictment** is returned by a Grand Jury, **arraignment**, or **information** is presented. [See: United States V. Wade, 388 U.S. 218, 237 (1967); Moore V.- Illinois, 434 U.S. 220(1977); Kirby V. Illonois, 406 U.S. 682(1972)].

Even while the official trial court records 'reflects' that the Appellant had already been indicted by an **Angelina County** Grand Jury, the robbery victim prior to Appellant being indicted and/or set for trial was never asked to participate in any traditional identific- ation process by police after robbery and had not been asked prior to Appellant's trial to **select**, or **choose** person or individual who had robbed him; **Thus**, when it came down to the time of Appellant's trial robbery victim did not identify Appellant in 'Open Court' nor pointed directly at Appellant [Letting The Records Reflect], that witness identified Appellant as person who used the store's rest- room prior to being robbed.[RR.VOL.II.,p. 38].

**Nevertheless**, The Twelfth Court Of Appeals in their **March 25Th, 2015**, unpublished opinion **erronerously** has found that the robbery victim **identified** Appellant at trial as person who committed the offense; And that even without **witness identification**, The store's surveillance video speaks for itself, and could had been used by the trial court[Judge] to link Appellant to the offense[As If The Trial Judge Was An Eyewitness To Offense][Emphasis Those Of Appellant's]; [See: Twelfth Court Of Appeals, Slip Opinion, at p. 5,6].

It is the 'vise' of such corrupting belief and/or procedure that thereafter a witness may be convinced that he or she is correct and would have came to the same decision[Identification] anyway. [See: Simmons V. United States, 390 U.S. 377, 383 (1968)].

Given the **unsound** decision in this case by The Twelfth Court Of Appeals, it is 'obvious' why the most single important factors att- ributing to 'wrongful convictions' in The United States is **Eyewit- ness Identification. United States V. Wade**, 87 S.Ct. 1926(1967); Fu- rthermore, **mistaken identification** are responsible for more wrongful convictions than any other cause combined. **United States V. Brownless,**

-14-

454 F.3d 131 (3D cIR. 2006).

Because 'misidentification' is the leading causes of many **wrongful** convictions in The United States, it is primarily for those reasons, that The 'Due Process' clause 'mandates' that identification process is to be 'free' of identification **techniques** that are **unnecessarily suggestive**, that may lead to 'irreparable mistaken'identification. United States V. Emanuel, 51 F.3d 1123 (3D Cir. 2006).

Courts have been called upon, and have already held that procedures where witness[s] are shown single photograph of suspect under arrest, was **constitutionally improper**. See: Delk V. State, 855 S.W. 2d 700 (Tex. Crim.App. 1993).

The trial prosecutors' in this case, 'acting in bad faith', purposely postponed having **robbery detectives [Police]** conduct or hold with robbery eyewitnesses any **photographic** showup or **live lineup** of possible robbery suspects with witnesses knowing full well it would **virtually** be next to impossible for robbery eyewitnesses to identify this Appellant from a **photographic array** or from a **live lineup** since robbery suspect's face was covered.

For the sake of not being too **argumentative**, Appellant admits, that The Twelfth Court Of Appeals [**First**] correctly went about determining whether the **in-court** identification was improper by conducting Biggers determining factors which weighted heavily against The State[See: Neil-V. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.ed. 2d 401(1972)][**Two-Step Analysis**]; While The Twelfth Court Of Appeals **correctly** relied on Biggers' first-step analysis in determining the **reliability** of the witness's identification testimony; **However**, The Twelfth Court Of Appeals 'obviated' analyzing the **second-step** of the Biggers' factor once The Twelfth Court Of Appeals found that the 'in-court' identification process was conducted properly[See: Manson V. Braithwaite,97 S.Ct. 2243 (1977)]; Cantu V. State, 738 S.W.2d 249(Tex.Crim.App. 1987) ].

**Last**, but not least, this Appellant argues that The State [**Appellee's**] has failed to prove, that members of The **Angelina** County District Attorney's Office were qualified to hold or conduct **photographic** or **live lineip** procedures as a 'routine performance' [Job Des-

-15-

cription] of the trial prosecutors' whom performed the photographic showup and live lineup procedure in this case.

In 2010, The Texas Legislature passed **Article 38.20, Texas Code Of Criminal Procedure**, and pursuant to this **newly-created** identification law that established **redefined** identification procedures that police agencies in Texas must **statutorily** adhere to; **Therefore**- there presently existed, at the time of this Appellant's **March 5Th,2014, Non-Jury** trial sufficient statutory law on the books, that should had served as an '**authoritative**' rule prohibiting Appellant's trial prosecutors' from holding, or conducting their **pretrial photographic showup** and/or conducting their **in-court** identification process with robbery victim.

The **Enactment** of **Texas Code Of Criminal Procedure, Article 38.20**, was enacted to govern **photographic showup's** and **live lineup's** identification procedures in Texas- this law was specifically designed to address the **improvements** and **standardization** of photographic and live lineup procedures [**Enacted By Acts, 82nd. Leg.,**Ch. 219[H.B. 215], Section 1, effective **September 1st, 2011**; Citing, <u>Tillman V. State</u>, No. 14-08-00846-CR, 2010 Tex.App. Lexis 4013(Tex. App.-Hou. 14Th Dist. 2010)].

**Article 38.20, Texas Code Of Criminal Procedure**, was designed to prevent the type of identification process that was conducted in this case; **However**, The **Angelina** County District Attorney Office, or its' **Assistant District Attorneys'[Trial Prosecutors'**], totally disregarding **statute law [T.C.C.P., Articvle 38.20], deliberately** thrumming their nose has '**by-passed**' the intent of **Article 38.20, Texas Code Of Criminal Procedure**, by creating their own '**identification procedure law**', and doing away with traditional police identification procedures designed by **Article 38.20**, which '**newly-created**' identification procedure '**invented**' by The **Angelina** County District Attorney's Office has been '**approved**' and '**sanctioned**' as passing **constitutional muster** by the presiding judge in this case, and by a **Three[3]** Justice panel for The Twelfth Court Of Appeals[**See: Twelfth Court Of Appeals,**Slip Opinion, at p. 3, **N.3**].

-16-

# V.

## GROUND FOR REVIEW NO. THREE:

WHETHER THE TWELFTH COURT OF APPEALS [PER CURIAM]
DECISION COMES INTO CONFLICT WITH THE U.S. SUPREME
COURT'S 'DUE PROCESS' STANDARD THAT WAS ANNOUNCED
IN <u>JACKSON V. VIRGINIA</u> REQUIRING EVIDENCE TO BE BOTH
**LEGALLY** AND **FACTUALLY** SUFFICIENT TO SUSTAIN CONVICTION
[AS IN THIS CASE THE EVIDENCE WAS LEGALLY AND FACTUALLY
INSUFFICIENT TO SUSTAIN THE DEADLY WEAPON FINDING].

## CASE DISCUSSION:

Appellant argues that the evidence heard by the presiding judge
in this entitled cause of action was **legally** and **factually** insuff-
icient to support the trial court's **affirmative finding** of a deadly
weapon, as alleged in the charging instrument, was not supported by
the evidence.

In this case, The State failed to introduce or produce any '**Demo-
nstrative-Evidence**' for inspection by the trier of facts[Presiding
Judge], of the weapon allegedly used by the robber, as the actual
weapon allegedly used by the robber was never found by investigating
police nor entered into evidence by the trial prosecutor;**Therefore**,
the trier of facts[Presiding Judge], had **[N]o** real evidentiary proof,
that the weapon used by the robber, in its' '**manner**, or **use**' was
capable of causing **serious bodily injury**, or **death**, due to the fact,
The State hearing conflicting evidence of the actual description
of the weapon allegedly used by the robber through its' witnesses',
The State '**willfully**' failed to proffer the testimony of a '**weapon**'
expert to testify that the weapon **depicted** in store's surveillance
security video was capable of **causing serious bodily** injury. **See:**
<u>Luckette V. State</u>, 906 S.W.2d 663(Tex. App.-Amarillo 1995);The '**Only**'
objects offered to witness to identify did not match the description
of the weapon used by the robber[RR.VOL.I.,p. 43-THRU-73]; And The
State '**knowingly**' declined to present the testimony of an expert
witness as far as the weapon used being a deadly weapon[RR.VOL.II.,
**p. 127**].

## THE LAW:

The Appellate Court decision in this case, **conflicts** with the applicable standard announced in **Jackson V. Virginia,** 443 U.S 307, 99 S.Ct. 2781, 61 L.ed.2d 560(1979), because the testimonial-evidence given by the robbery victim and police who apprehended Appellant did not prove, that the weapon allegedly used by Appellant to rob a convience store, was in its' **manner & use** capable of causing serious bodily injury, or death. The evidence presented by The state, and heard by the presiding judge [**The Trier Of Facts**], was **legally insufficient** to satisfy the 'Due Process' clause of the **Fourteenth** amendment, which required The State to prove **each element** of the offense **beyond a reasonable doubt.** See: **In Re Winship,** 397 U.S. 358 (1970). In this case, it was clear that Appellant suffered a violation of his **Fourteenth** amendment right to 'fundamental fairness', that is guaranteed by the due process clause, and The Twelfth Court Of Appeals decision **fatally** denied Appellant of that right of which he's guaranteed protection under. **See Also, Thompson V. Louisville,** 362 U.S. 199, 80 S.Ct. 62, L.ed.2d 654(1960). The testimony of the description of the deadly weapon, and its' **manner and use** capable of causing serious bodily injury and/or death was simply based upon a **'hunch'** that lacks any evidentiary support that requires this Court to **reverse** the convicting court's deadly weapon[**Affirmative Finding**] findings. See: **Brooks V. State**, 323 S.W.3d 893 (Tex.Crim. App. 2012)

## VI.
## PRAYER

Appellant, **Calvin Louise Rushing,** respectfully presents this **Petition For Discretionary Review,** and prays that this Court will 'reverse' his conviction, and remand this case back to the convicting court for proceedings consistents with this Court's decision; **Or in the alternative** , without waiving the above and foregoing, the Appellant request these proceedings be returned back to The Twelfth Court Of Appeals with instructions for The Twelfth Court Of Appeals to 'complete' the second-step of The **Biggers'** factor- **Whether The Identification Procedure Gave Rise To A Substantial Likelihood Of Irreparable Misidentification.**

-18-

RESPECTFULLY SUBMITTED,

*Calvin Rushing*

CALVIN LOUISE RUSHING
TDCJ-ID# 1925565
ALLAN B. POLUNSKY UNIT
3872 FM 350 SOUTH
LIVINGSTON, TEXAS 77351


# VII

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing 'Appellant's Petition For Discretionary Review' on this __/__ DAY of _JuNe_____, 2015, has been mailed by United States Postal Service to the State's Counsel, **Carey Jensen**, Assistant District Attorney of Angelina County.


*Calvin Rushing*

CALVIN LOUISE RUSHING
TDCJ-ID # 1925565
ALLAN B. POLUNSKY UNIT
3872 FM 350 SOUTH
LIVINGSTON, TEXAS 77351



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## MARCH 25, 2015

## NO. 12-14-00112-CR

**CALVIN LOUISE RUSHING,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2012-0431)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# NO. 12-14-00112-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CALVIN LOUISE RUSHING,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Calvin Louise Rushing appeals his conviction for aggravated robbery, for which he was sentenced to imprisonment for fifty years. In two issues, Appellant argues that (1) the trial court erred in permitting a witness to make an impermissible in-court identification of him and (2) the evidence is legally insufficient to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated robbery and pleaded "not guilty." The case proceeded to a bench trial.

The evidence at trial indicates that shortly before 3:00 a.m., on May 20, 2012, an African American male entered the Polk's Pick-it-Up store near the Idlewood subdivision in Angelina County, Texas. The store employees, Micah Cooper and Mindy Tovar, were in the process of closing the store. Once inside, the man entered the store's public restroom near the checkout counter. A short time later, he emerged from the restroom and exited the store. As he departed, the man walked past Cooper, who "got a good look at him." At the time, the store's interior and exterior were equipped with multiple surveillance cameras connected to a continuously operating digital video recorder system.

Soon thereafter, Cooper was in the store cooler and heard Mindy Tovar call his name. Cooper looked through the cooler doors and saw Tovar and an African American male with a towel over his head walking toward the cooler. Cooper noted that the man was wearing the same clothes as the man he observed leaving the restroom earlier.[1] Cooper exited the cooler and saw that the man had a "spear like object" in his hand. Cooper elaborated that the object was a couple of feet long with a two or three inch long sharp metal point on the end.

The man directed Cooper and Tovar to walk to the checkout counter, where they emptied the money from the cash registers and handed it to him. Next, the man led the two store employees to the back storeroom and told them to lie face down on the floor. Cooper and Tovar complied and remained there until Cooper heard a customer in the store. At that point, Cooper engaged the silent alarm and called 9-1-1 from his cell phone. Cooper later determined that the man had absconded with approximately $400 in cash, a six pack of beer, cigarettes, and cigarette lighters.

In response to Cooper's 9-1-1 call, Angelina County Sheriff's Deputy Howard McDaniel arrived at the scene. McDaniel viewed the surveillance video and identified the vehicle in which the suspect arrived at the store as a white Buick Century. The following evening, a Lufkin Police Department officer stopped a vehicle matching that description. McDaniel, who was contacted regarding the vehicle, soon arrived at the location. Appellant, who was driving the vehicle, was arrested for driving without a valid license. During the ensuing search of the vehicle, a towel bearing some similarity to the towel worn in the Polk's store robbery was discovered in the vehicle along with an open thirty pack of beer.

On cross examination, McDaniel stated that, at the time of arrest, Appellant had a similar build and similar features as did the man Cooper described to him. But McDaniel conceded that Appellant did not, at that time, have any facial hair, nor was he dressed the same as the man Cooper described. McDaniel also acknowledged other discrepancies. Specifically, he testified his report indicated that Cooper stated the object the man used may have been a rake or a cultivator, but that the dispatch call notes set forth that the suspect used a metal pipe. He further

---

[1] At trial, Cooper identified Appellant as the individual he encountered that night.

2

testified that the garden cultivator found in the trunk of the Buick Century was suspected to have been the object used in the robbery, and no spear-like object was found in the vehicle.[2]

James Bates testified he was the owner of and a passenger in the Buick Century that Appellant was driving when he was stopped by police the night after the robbery. Bates further testified that he had known Appellant for a couple of months and that Appellant borrowed the vehicle the night of the offense and returned it the next day. Bates only vaguely recalled Appellant's reason for borrowing his vehicle. And he could not remember whether Appellant had facial hair at the time in question. Bates verified that the vehicle identified in the surveillance video and photographs had the same type of tires his vehicle had at that time.

Melton Joyce testified that Appellant worked for him at the time leading up to the robbery. Joyce further testified that he could not remember if Appellant had facial hair during the time immediately preceding his arrest. However, Joyce recalled that Appellant did, at times, have facial hair when he worked for him.

At the conclusion of trial, the trial court found Appellant "guilty" as charged. After conducting a sentencing hearing, the trial court sentenced Appellant to imprisonment for fifty years. This appeal followed.

## ADMISSIBILITY OF THE IN-COURT IDENTIFICATION

In his first issue, Appellant argues the trial court erred in allowing Cooper's in-court identification because it was tainted by an earlier, unduly suggestive identification procedure.[3]

### Applicable Law

An in-court identification is inadmissible if it has been tainted by an impermissibly suggestive pretrial identification procedure. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). In determining whether a trial court erroneously admitted in-court identification testimony, we first must determine whether the pretrial procedure was impermissibly suggestive. *See id.* Next, we ascertain whether the procedure gave rise to a substantial likelihood of irreparable misidentification. *See id.; Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.–San

---

[2] McDaniel stated that even though his report indicated that Cooper referred to the object as a rake or cultivator, Cooper never, in fact, referred to the object as a rake or cultivator. McDaniel further stated that he did not intend to imply in his report that Cooper identified the object as either of those things.

[3] Cooper did not participate in any traditional identification "lineup." Presumably, Appellant contends that allowing Cooper to view the video security surveillance footage of the offense shortly before he testified at trial was an unduly suggestive identification procedure.

Antonio 1998, pet. ref'd); *see also **Delk v. State**,* 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

The defendant bears the burden to prove these two elements by clear and convincing evidence. ***Barley v. State***, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). If the defendant meets his burden, the in-court identification is inadmissible unless the state presents clear and convincing evidence that the identification was of "independent origin." ***United States v. Wade***, 388 U.S. 218, 240 n.31, 875 S. Ct. 1926, 1939 n.31, 18 L. Ed. 2d 1149 (1967).

Reliability is the linchpin in determining the admissibility of the identification testimony. *See **Loserth***, 963 S.W.2d at 772. Testimony is reliable if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure. *See id.* In assessing reliability, we consider the following nonexclusive factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of alertness; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of confrontation; and (5) the lapse of time between the alleged act and the time of confrontation. *See **Ibarra***, 11 S.W.2d at 195 (citing ***Neil v. Biggers***, 409 U.S. 188, 199–200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972)). We consider these factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. ***Ibarra***, 11 S.W.2d at 195. The factors, viewed in this light, are then weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 195–96. A finding that a challenged pretrial identification procedure was not, in fact, impermissibly suggestive will obviate the need to assay whether, under the circumstances, it created a substantial likelihood of misidentification. ***Webb v. State***, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

## Analysis

In the instant case, Cooper described the suspect to law enforcement officers as an African American male over six feet tall and having a muscular build, with a mustache and goatee. Cooper conceded at trial that a customer's using the public restroom was not unusual. However, he stated that the man was wearing a white shirt with a palm tree on the back, which caught his attention. Moreover, Cooper admitted that he avoided looking directly at the man during the commission of the offense. But he reviewed the surveillance video of the robbery on the store's computer and was able to see that man's face in some of the footage. Cooper stated that he was not asked to view a photo lineup or otherwise identify the man who entered the store to use the restroom and who later committed the crime.

Before trial, Cooper again viewed the surveillance video at the district attorney's office. Over objection, Cooper identified Appellant at trial as the person who committed the offense.[4] Cooper testified that he had no doubt that Appellant was the same man who entered the store, used the restroom, and later re-entered the store with the towel over his head to commit the robbery. On cross examination, Cooper acknowledged that there was no one else in the courtroom other than Appellant who resembled the individual depicted in the video.

This court is well aware that the manner or the content of a pretrial identification procedure may render it impermissibly suggestive. *See* *Barley*, 906 S.W.2d at 33. Use of a lone photograph without any of the traditional safeguards of a lineup or photo array is inherently suspect and has been uniformly condemned by the courts. *Loserth*, 985 S.W.2d at 543. Appellant contends on appeal that our conclusion concerning whether the pretrial procedure was impermissibly suggestive is "obvious." We disagree.

The state is required to prove that the accused was the person who committed the crime. *Wilson v. State*, 9 S.W.3d 852, 855 (Tex. App.–Austin 2000, no pet.). The identity of the perpetrator of an offense can be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Dudley v. State*, 205 S.W.3d 82, 88 (Tex. App.–Tyler 2006, no pet.). No formalized procedure is required for the state to prove the identity of the accused. *Wilson*, 9 S.W.3d at 855.

Here, Cooper had an opportunity to observe Appellant when Appellant first entered the store, when he emerged from the restroom, and during the commission of the offense. Cooper also had an opportunity to observe Appellant when he watched the surveillance video. Approximately two years had passed from the date of offense by the time of Cooper's trial testimony. But the only photographs he was shown prior to trial were those derived from the same surveillance video he previously viewed, and which was admitted into evidence without objection.[5] The surveillance video "speaks for itself" and could have been used by the court

---

[4] The video of the entire event was introduced into evidence along with numerous photographs made from the video. In those photographs, the face of a man wearing the towel over his head is visible along with a spear-like object in his hand.

[5] The record indicates that, prior to trial, the prosecutor had Cooper sit in the courtroom to "look at an individual and see if he recognized him." However, Appellant has not argued that this action served to taint Cooper's in-court identification testimony. *See* TEX. R. APP. P. 38.1(i). Even so, there is nothing in the record concerning what Cooper observed in this instance. Thus, the fact that Cooper may have observed an individual in the courtroom for the purposes of recognition, without more, does not aid us in determining whether any such observation Cooper may have had of Appellant was impermissibly suggestive.

5

without Cooper's in-court identification to link Appellant to the offense. Moreover, any discrepancies concerning whether Appellant had facial hair at the time in question go to the weight of Cooper's in-court identification, not its admissibility. *See, e.g., Jackson v. State*, 657 S.W.2d 123, 128 (Tex. Crim. App. 1983) (fact that witness testified she could not recall specific facts related to clothes worn by person she identified at trial as perpetrator went to weight rather than to admissibility of identification).

Appellant further argues that Cooper's in-court identification was tainted because Appellant was the only person in the courtroom who matched the description given by Cooper. However, Appellant has not cited to, nor is this court aware of, any authority holding that the fact that a defendant is sitting at the table next to defense counsel when a witness is making an in-court identification is an impermissibly suggestive procedure that may lead to a very substantial likelihood of irreparable misidentification. *See Harrison v. State*, No. 14-10-00254-CR, 2011 WL 5589532, at *15 (Tex. App.–Houston [14th Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication); *cf. Maxwell v. State*, 10 S.W.3d 785, 787 (Tex. App.–Austin 2000) (noting that defendant still has no right to pretrial lineup under *Sapp v. State*, 476 S.W.2d 321, 323 (Tex. Crim. App. 1972)).

Based on our review of the record, with due consideration given to the nonexclusive factors pertaining to Cooper's reliability, we hold that Cooper's identification of Appellant was not impermissibly suggestive. Accordingly, we need not address whether it created a substantial likelihood of misidentification. *See Webb*, 760 S.W.2d at 269. Appellant's first issue is overruled.

## EVIDENTIARY SUFFICIENCY-DEADLY WEAPON

In his second issue, Appellant argues that the evidence is insufficient to support the trial court's finding that he used or exhibited a deadly weapon during the commission of the offense.

### Standard of Review

In Texas, the *Jackson v. Virginia*[6] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the

---

[6] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and, therefore, defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We further defer to the factfinder as the sole judge of the witnesses' credibility and the weight of their testimony. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence against the elements of the offense as defined by the hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* This standard can be applied to both jury trials and bench trials. *See id.*

**Applicable Law**

A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2014). A weapon can be deadly by design or use. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The phrase "used during the commission of a felony offense" refers to the wielding of a weapon with effect, but it extends as well to any employment of a deadly weapon, even its

7

simple possession, if such possession facilitates the associated felony. *See Rodriguez v. State*, 31 S.W.3d 772, 777 (Tex. App.–Austin 2000, no pet.) (citing *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

"Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Tucker*, 274 S.W.3d at 691. The placement of the word "capable" is crucial to understanding this method of determining deadly weapon status. *Id.* The state is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is capable of causing death or serious bodily injury." *Id.*; *see also Mechell v. State*, 374 S.W.3d 454, 458 (Tex. App.–Waco 2011, pet. ref'd) (capability is evaluated based on circumstances that existed at time of offense; the word "capable" is expansive, not limiting). Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *Tucker*, 274 S.W.3d at 691–92. However, the state is required to show that the object had more than a hypothetical capability of causing death or serious bodily injury. *Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.–Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

There are several factors to consider in determining whether an object is a deadly weapon, including the size and shape of the object, the physical proximity of the parties, and the weapon's potential for causing death or serious bodily injury. *See Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd) (citing *Thomas v. State*, 821 S.W.2d 616 (Tex. Crim. App. 1991). Lay testimony may be sufficient to support a deadly weapon finding, and it is not necessary for the weapon to be introduced into evidence. *See Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd).

## Analysis

In the case at hand, the indictment alleged that the deadly weapon used in the commission of the offense was "a large stick with metal point at end." The object was clearly visible in the both the surveillance video and in several photographs admitted into evidence.

The record reflects that Cooper was twenty-two years old at the time of the offense, which occurred at a convenience store at approximately 3:00 a.m. Cooper testified that Appellant carried a "spear like object" with a handle at least a couple of feet long and with a

8

metal point that was between two and three inches long. Cooper further testified that the object seemed like it could cause serious bodily injury and he believed the object was being carried for the purpose of intimidation. Cooper stated that he was fearful of the weapon and concerned that if he did not do as Appellant directed, Appellant would use the weapon to hurt him badly or kill him.

During cross examination, Cooper acknowledged that he never touched or handled the object and that Appellant made no specific threats to use the object against either him or Tovar. And even though the surveillance video and still photographs indicated that Appellant positioned the object horizontally in one or more instances, Cooper testified that Appellant generally held the object at his side.

Appellant contends the record does not indicate that he used the object aggressively toward the store employees. However, we note that interaction is not required to sustain a conviction for aggravated robbery, so long as the accused was aware that his conduct was reasonably certain to place someone in fear, and someone actually was placed in fear. *See Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see also Herring v. State*, 202 S.W.3d 764, 766 (Tex. Crim. App. 2006) (objects used to threaten deadly force are, in fact, deadly weapons).

Here, the two foot long stick with a sharp metal point carried by Appellant throughout the commission of the offense was not something that would have been routinely carried into a store by a customer. Appellant did not carry it into the store when he first entered the store. Based on our review of the record, we conclude that the trial court reasonably could find that the object Appellant took into the store was intended to intimidate store employees. Moreover, the trial court reasonably could find that Cooper's fear of suffering serious bodily injury or death was justified as a result of his being confronted by a man seeking to conceal his identity and carrying such an object into the store at 3:00 a.m. Therefore, we hold that the evidence is legally sufficient to support the trial court's finding that the object was a deadly weapon. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

9

**GREG NEELEY**
Justice

Opinion delivered March 25, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10